## ATLANTIC COAST LINE RAILROAD COMPANY *v.* STATE OF GEORGIA.

### ·ERROR TO THE COURT OF APPEALS OF THE STATE OF GEORGIA.

No. 24. Argued April 17, 1913.—Decided June 8, 1914.

The existence of difference of opinion as to which is the best form of necessary safety device does not preclude the exercise of legislative discretion; and so far as the question is simply one of expediency the legislature is competent to decide it.

The criticism that a police statute requires a carrier to comply with conditions beyond its control and, therefore, deprives it of its property without due process of law, is not open in this court if the state court has construed the statute as not so requiring the carrier.

The state court having held that the term "railroad company" as used

in a state police statute is inclusive of natural persons operating a railroad and that the statute is not unconstitutional as denying equal protection of the law to railroad corporations because it does not include natural persons, this court concurs in that view.

A state police statute requiring railroad companies to use a specified safety device is not unconstitutional as denying equal protection of the laws because it does not affect receivers operating railroads; in view of the temporary and special character of a receiver's management, the classification is reasonable and proper.

In the absence of legislation by Congress, the States may exercise their powers to secure safety in the physical operation of railroad trains within their territory, even though such trains are used in interstate commerce.

In regulating interstate trains as to matters in regard to which Congress has not acted, a State may not make arbitrary requirements as to safety devices; but its requirements are not invalid as interfering with interstate commerce because another State, in the exercise of the same power, has imposed, or may impose, a different requirement.

Congress may, whenever it pleases, make the rule and establish the standard to be observed on interstate highways.

None of the safety appliance statutes enacted by Congress relate to or regulate locomotive headlights.

The intent of Congress to supersede the exercise of the police power of the States in respect to a subject on which it has not acted cannot be inferred merely from the fact that such subject has been investigated under its authority.

The statute of Georgia of 1908, Civil Code, §§ 2697, 2698, requiring railroad companies to use locomotive headlights of specified form and power, is not unconstitutional either as a denial of equal protection of the law, as deprivation of property without due process of law, or as an interference with interstate commerce.

135 Georgia, 545, affirmed.

THE facts, which involve the constitutionality of the Locomotive Headlight Law of Georgia, are stated in the opinion.

*Mr. Henry L. Stone,* with whom *Mr. Alfred P. Thom, Mr. Alexander Hamilton* and *Mr. Robert C. Alston* were on the brief, for plaintiff in error:

The act known as the Georgia Headlight Law is viola-

tive of the due process clause of the Fourteenth Amendment. *Addyston Pipe Co.* v. *United States,* 175 U. S. 211; *Allgeyer* v. *Louisiana,* 165 U. S. 578, 589; *Baxendale* v. *Railway Co.,* 5 C. R. (N. S.) 336; *Bement* v. *National Harrow Co.,* 186 U. S. 70; *Bonnett* v. *Vallier,* 17 L. R. A. (N. S.) 492; *Bracewell Coal Co.* v. *People,* 147 Illinois, 66; *C. H. & D. R. Co.* v. *Bowling Green,* 41 L. R. A. (Ohio) 422; *Cleveland, C., C. & St. L. Ry. Co.* v. *Connersville,* 37 L. R. A. (Ind.) 175; *Cleveland* v. *Clements Bros. Co.,* 59 L. R. A. (Ohio) 775; *Dobbins* v. *Los Angeles,* 195 U. S. 223; Elliott on Railroads, 2d ed., § 668; *Id.,* Vol. 2, Note, p. 24; *Harbison* v. *Knoxville Iron Co.,* 103 Tennessee, 421; *Health Department* v. *Trinity Church,* 145 N. Y. 32, 41; *Houston & Tex. Cent. R. R. Co.* v. *Mayes,* 201 U. S. 321, 329; *Hollister* v. *Benedict Mfg. Co.,* 113 U. S. 59; *Int. Com. Comm.* v. *Balt. & Ohio R. R. Co.,* 43 Fed. Rep. 52; *Int. Com. Comm.* v. *Chicago G. West. Ry.,* 209 U. S. 108; *Lawton* v. *Steele,* 152 U. S. 133; *McLean* v. *Arkansas,* 211 U. S. 547; *Mo. Pac. R. Co.* v. *Humes,* 115 U. S. 512; *Nat. Phonograph Co.* v. *Sehlegel,* 128 Fed. Rep. 733; *Ritchie* v. *People,* 154 Illinois, 98, 29 L. R. A. 79; *Shelbyville* v. *C., C., C. & St. L. Ry. Co.,* 146 Indiana, 66; *United States* v. *Palmer,* 128 U. S. 262, 271; *Welch* v. *Swasey,* 214 U. S. 105; *Wisconsin* v. *Kreutzberg,* 58 L. R. A. 748, 751.

The act violates the equal protection clause of the Fourteenth Amendment. *Cotting* v. *Kansas City Stock Yards,* 183 U. S. 79; *Dobbins* v. *Los Angeles,* 195 U. S. 223; *Gulf Col. & S. Fe R'y Co.* v. *Ellis,* 165 U. S. 150; *Harding* v. *People,* 43 N. E. Rep. 624; *Henderson* v. *New York,* 92 U. S. 259; *Lochner* v. *New York,* 198 U. S. 45; *Los Angeles* v. *Hollywood Cemetery,* 57 Pac. Rep. 153; *Yick Wo* v. *Hopkins,* 118 U. S. 356.

The act is unenforcible and void under the commerce clause of the Federal Constitution and because Congress by its legislation has preëmpted and occupied the field of regulation of the same subject-matter.

The act interferes with and places a burden upon interstate commerce. *Adams Exp. Co.* v. *Kentucky,* 214 U. S. 218, 223; *Atl. Coast Line* v. *Wharton,* 207 U. S. 328, 334; *Bowman* v. *C. & N. W. R. Co.,* 125 U. S. 465; *Cooley* v. *Board of Wardens,* 12 How. 299; *Covington Bridge Co.* v. *Kentucky,* 154 U. S. 204, 209; *Hall* v. *DeCuir,* 95 U. S. 485; *Henderson* v. *New York,* 92 U. S. 259; *Un. Pac. Ry.* v. *Chic., R. I. & Pac. Ry.,* 163 U. S. 564; Rev. Stat., § 5258; *Welton* v. *Missouri,* 91 U. S. 275; *West. Un. Tel. Co.* v. *Kansas,* 216 U. S. 1.

Congress by its legislation has preëmpted and occupied the field of regulation of the same subject-matter, to the exclusion of state legislation. See acts of March 2, 1893, known as the Safety Appliance Act, 27 Stat. 531; March 2, 1903, amending Safety Appliance Act, 32 Stat. 943; May 27, 1908, authorizing investigations for safety of railway operation, 35 Stat. 324, c. 200; April 14, 1910, supplemental of the Safety Appliance Act, 36 Stat. 298, c. 160; May 6, 1910, reports of accidents, 36 Stat. 350, c. 208; May 30, 1908, as to ash pans, 35 Stat. 476; February 17, 1911, see also the statutes relating to boilers and appurtenances, and to the hours of service. See also the Employers' Liability Act, and the act of March 4, 1911, as to investigations, 36 Stat. c. 285, § 1, p. 1397, and the Act to Regulate Commerce, § 1; *Adams Exp. Co.* v. *Croninger,* 226 U. S. 491; Block Signal Board's Final Report to Int. Com. Comm., June 29, 1912, pp. 14–15; *Chic., B. & Q. R'y* v. *Miller,* 226 U. S. 513; *Chic., St. P., M. & O. Ry.* v. *Latta,* 226 U. S. 519; *Chic., R. I. & Pac. R'y* v. *Hardwick Elevator Co.,* 226 U. S. 426; *Chic., R. I. & Pac. Ry. Co.* v. *Arkansas,* 219 U. S. 453, 466; *Employers' Liability Cases,* 223 U. S. 1, 55; Interstate Commerce Commission's Rules, promulgated March 13, 1911; Twenty-fourth Ann. Rep. to Congress, December 21, 1910, pp. 44–47, and pp. 173–189; *Johnson* v. *So. Pac. Co.,* 196 U. S. 1; *Mich. Cent. R. Co.* v. *Vreeland,* 227 U. S.

59; *N. Y., N. H. & H. R. Co.* v. *New York*, 165 U. S. 628,
632; *N. Y. C. & H. R. R. Co.* v. *Hudson County*, 227 U. S.
248; *Nor. Pac. R'y* v. *Washington*, 222 U. S. 370; *Southern
Ry. Co.* v. *United States*, 222 U. S. 20; *Southern R'y Co.*
v. *Reid*, 222 U. S. 424; *Southern Ry. Co.* v. *Reid & Beam*,
222 U. S. 444; *B. & O. R. Co.* v. *Indiana Railroad Com-
mission*, 196 Fed. Rep. 690, 699.

The brief contains a summary of the Headlight Laws
in sixteen States.

*Mr. Thomas S. Felder*, Attorney General of the State of
Georgia, for defendant in error:

Statutes of States of the character of the one under
consideration, being designed for the protection of the
property and lives of the people, are not unconstitutional
because they may in a manner affect interstate com-
merce, nor do they violate the due process clause of the
Fourteenth Amendment to the Constitution because an
expense may be incurred in obeying their regulations.
*N. Y., N. H. & H. R. R. Co.* v. *New York*, 165 U. S.
628; *Mo. Pac. Ry.* v. *Larabee Mills*, 211 U. S. 622; *Hen-
nington* v. *Georgia*, 163 U. S. 299; *Smith* v. *Alabama*, 124
U. S. 465; *N. Y. & N. E. R. R. Co.* v. *Briston*, 151
U. S. 567; *Chicago, R. I. & P. R. R.* v. *Arkansas*, 219
U. S. 453; *Savage* v. *Jones*, 225 U. S. 501; *Southern Ry.
Co.* v. *King*, 217 U. S. 524; *Chic., B. & Q. R. Co.* v. *Illinois*,
200 U. S. 561; *Reid* v. *Colorado*, 187 U. S. 137; *Asbell* v.
*Kansas*, 209 U. S. 251; *Chic., M. & St. P. R. Co.* v. *Solan*,
169 U. S. 133; *Mo. Pacific Ry.* v. *Humes*, 115 U. S. 512;
*N. C. & St. L.* v. *Alabama*, 128 U. S. 96.

The act does not violate the equal protection clause of
the Constitution because it excepts from its operations
tram, mill, and lumber roads. This would seem to be a
wise and reasonable classification. *Chic., R. I. & Pac.
R. Co.* v. *Kansas*, 219 U. S. 453; *New York, N. H. & H. R.
Co.* v. *New York, supra; People* v. *New York &c.*, 56 Hun,

409; *Missouri &c. R. Co.* v. *State,* 121 S. W. Rep. 930 (Ark.); *Chicago &c. R. Co.* v. *Railroad Com'rs,* 90 N. E. Rep. 1011.

The contention that the act exempts from its operations railroads operated by receivers is not tenable. The act does not by its terms exempt receivers of railroads. A court would order its officer to comply with the terms of the statute and equip the locomotives with the headlights required.

The statute does not interfere with the right of the railroad company to contract. *New York & New England R. Co.* v. *Bristol,* 151 U. S. 556, 567; McGehee on Due Process of Law, 345.

It is not a taking of property without due process of law, in contemplation of this provision of the Constitution, because the railroad, in order to comply with the statute, would have to discard the headlights used by it, which it considers are good headlights, and to replace the same with the headlights required under the act. All property is held subject to the police regulations of the State. *Chi., B. & Q. R. Co.* v. *Illinois,* 200 U. S. 561; *New York, N. H. & H. R. Co.* v. *New York,* 165 U. S. 628; *Bacon* v. *B. & M. R. Co.,* 76 Atl. Rep. 128 (Vt.); *Munn* v. *Illinois,* 94 U. S. 113; *Missouri Pac. R. Co.* v. *Humes,* 115 U. S. 512.

The legislature may prescribe in detail the kind of light which should be used, and may also designate the size of the reflector as well as the number of watts that should be used. The intensity of an electric light is measured by the watt, and the reflector increases the breadth and intensity of the light, as was well known to the legislature. *Chesapeake &c.* v. *Manning,* 186 U. S. 238; Freund on Police Power, § 34; *Atchison &c. R. R. Co.* v. *Matthews,* 174 U. S. 96, 102.

This statute is in the interest of the public and its wisdom cannot be questioned by the courts. The public

policy of the Government is to be found in its statutes and
when the law-making power speaks upon a particular
subject over which it has constitutional power to legislate,
public policy in such cases is what the statute enacts.
*Logan* v. *Postal Tel. Co.*, 157 Fed. Rep. 570, 587; *United
States* v. *Freight Association*, 166 U. S. 340; *Chi., B. & Q.
R. R. Co.* v. *McGuire*, 219 U. S. 549, 569.

The subject has not been acted upon in any way by
Congress or by the Interstate Commerce Commission, di-
rectly or indirectly. The act does not in any way conflict
with any act of Congress or any rule or regulation of the
Interstate Commerce Commission, and in the absence
of such conflict the Federal courts will not declare the
act invalid as interfering with interstate commerce. *Sav-
age* v. *Jones*, 225 U. S. 501, 533; *Mo. Pac. Ry.* v. *Larabee
Mills*, 211 U. S. 612, 623; *Reid* v. *Colorado*, 187 U. S. 137,
148.

MR. JUSTICE HUGHES delivered the opinion of the
court.

The Atlantic Coast Line Railroad Company, the plain-
tiff in error, was convicted of violating a statute of the
State of Georgia known as the 'headlight law.' Pub.
Laws (Ga.), 1908, pp. 50, 51; Civil Code, §§ 2697, 2698.
In defense it was insisted that the act contravened the
commerce clause and the Fourteenth Amendment of
the Constitution of the United States. On appeal from
the judgment of conviction the Court of Appeals of the
State of Georgia certified the questions thus raised, to-
gether with others involving the application of the state
constitution, to the Supreme Court of the State. Answer-
ing these questions, that court sustained the validity of
the statute (135 Georgia, 545), whereupon final judgment
was entered and this writ of error was sued out.

The material portions of the statute are as follows:

"Section 1. Be it enacted by the General Assembly of Georgia, and it is hereby enacted by authority of the same, That all railroad companies are hereby required to equip and maintain each and every locomotive used by such company to run on its main line after dark with a good and sufficient headlight which shall consume not less than three hundred watts at the arc, and with a reflector not less than twenty-three inches in diameter, and to keep the same in good condition. The word main line as used herein means all portions of the railway line not used solely as yards, spurs and sidetracks.

"Section 2. Be it further enacted, That any railroad company violating this Act in any'respect shall be liable to indictment as for a misdemeanor in any county in which the locomotive not so equipped and maintained may run, and on conviction shall be punished by fine as prescribed in Section 1039 of the Code of 1895.   .   .   .

"Section 4. Provided this Act shall not apply to tram roads, mill roads and roads engaged principally in lumber or logging transportation in connection with mills."

The contention is made that this act deprives the company of its liberty of contract, and of its property, without due process of law. It compels the disuse of a material part of the company's present equipment and the substitution of a new appliance. The use of locomotive headlights, however, is directly related to safety in operation. It cannot be denied that the protective power of government, subject to which the carrier conducts its business and manages its property, extends as well to the regulation of this part of the carrier's equipment as to apparatus for heating cars or to automatic couplers. The legislature may require an adequate headlight, and whether the carrier's practise is properly conducive to safety, or a new method affording greater protection should be substituted, is a matter for the legislative judgment. But it is insisted that the legislature has gone beyond the

limits of its authority in making the specific requirements contained in the act as to the character and power of the light and the dimensions of the reflector. This argument ignores the established principle that if its action is not arbitrary—is reasonably related to a proper purpose—the legislature may select the means which it deems to be appropriate to the end to be achieved. It is not bound to content itself with general directions when it considers that more detailed measures are necessary to attain a legitimate object. Particularization has had many familiar illustrations in cases where there has been a conviction of the need of it, as, for example, in building regulations and in provisions for safeguarding persons in the use of dangerous machinery. So far as governmental power is concerned, we know of no ground for an exception in the case of a locomotive headlight.

It cannot be said that the legislature acted arbitrarily in prescribing electric light, in preference to others, or that, having made this selection, it was not entitled to impose minimum requirements to be observed in the use of the light. Witnesses for the plaintiff in error, including its general superintendent of motive power and other employés holding important positions and conversant with the exigencies of operation, presented their objections to the use of the electric headlight. Locomotive engineers who for many years had driven locomotives with such a light testified for the State, expressing a decided opinion in favor of the use of electric headlights in the interest of safe operation and submitting their views in answer to the objections that had been urged. Assuming that there is room for differences of opinion, this fact does not preclude the exercise of the legislative discretion. So far as the question was one simply of expediency—as to the best method to provide the desired security—it was within the competency of the legislature to decide it. *N. Y. & N. E. R. R. Co.* v. *Bristol,* 151 U. S. 556, 571; *C., B. & Q.*

*Ry Co.* v: *Drainage Com'rs,* 200 U. S. 561, 583, 584; *Mc-Lean* v. *Arkansas,* 211 U. S. 539, 547, 548; *C., B. & Q. R. R. Co.* v. *McGuire,* 219 U. S. 549, 568, 569, and cases there cited.

As to the objection that the statute makes no provision for conditions beyond the carrier's control, it is sufficient to say that in the light of the construction placed upon the act by the Supreme Court of the State, we are not at liberty to regard it as open to this criticism (135 Georgia, pp. 561, 562); certainly, no such case is here presented. We conclude that there is no valid objection to the statute upon the ground that it deprives the carrier of liberty or property without due process of law.

The further contention is that the statute offends in denying to the plaintiff in error the equal protection of the laws. Specifically, the complaint is that the act does not apply to receivers operating railroads, and that it expressly excepts tram roads, mill roads and roads engaged principally in lumber or logging transportation in connection with mills. As to the first, it cannot be said that the act does exclude receivers from its requirements. The state court has ruled that the words 'railroad company' in the statute include natural persons as well as corporations. It declined to decide that receivers were not included; but, conceding, without deciding, that they were not, it was held that the statute would not for that reason violate the equal protection clause in view of the temporary and special character of receivers' management. 135 Georgia, pp. 555, 556. We concur in this view. As to the exceptions made by the statute of tram roads, mill roads, etc., it is impossible to say that the differences with respect to operation and traffic conditions did not present a reasonable basis for classification. *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 78, 81; *Barrett* v. *Indiana,* 229 U. S. 26, 30; *German Alliance Ins. Co.* v. *Kansas,* 233 U. S. 389, 418.

VOL. CCXXXIV—19.

Finally, it is urged that the statute constitutes an unwarrantable interference with interstate commerce. The locomotive, with respect to which the accusation was made, was at the time being regularly used in the hauling of interstate freight trains over the company's main line of railroad and was equipped with an oil headlight. The statute, as the Supreme Court of the State said, was not directed against interstate commerce, but it was held that it incidentally applied to locomotives used in hauling interstate trains while these were moving on the main line in the State of Georgia. This being so, the act is said to be repugnant to the exclusive power of Congress. It is argued that if Georgia may prescribe an electric headlight, other States through which the road runs may require headlights of a different sort; that, for example, some may demand the use of acetylene and that others may require oil; and that, if state requirements conflict, it will be necessary to carry additional apparatus and to make various adjustments at state lines which would delay and inconvenience interstate traffic.

The argument is substantially the same as that which was strongly presented to the court in *New York, New Haven & Hartford R. R. Co.* v. *New York,* 165 U. S. 628, where the plaintiff in error was held subject to penalty for the violation of a New York statute which in substance made it unlawful for any steam railroad doing business in that State to heat its passenger cars, on any other than mixed trains, by any stove or furnace kept inside of the car or suspended therefrom. The railroad company was a Connecticut corporation having but a few miles of road within the State of New York and operating through trains from New York through Connecticut to Massachusetts. As this court said in its opinion, the argument was made that 'a conflict between state regulations in respect of the heating of passenger cars used in interstate commerce would make safe and rapid

transportation impossible; that to stop an express train on its trip from New York to Boston at the Connecticut line in order that passengers may leave the cars heated as required by New York, and get into other cars heated in a different mode in conformity with the laws of Connecticut, and then at the Massachusetts line to get into cars heated by still another mode as required by the laws of that Commonwealth, would be a hardship on travel that could not be endured.' But the court ruled that these 'possible inconveniences' could not affect 'the question of power in each State to make such reasonable regulations for the safety of passengers on interstate trains as in its judgment, all things considered is appropriate and effective.' 165 U. S. 632, 633.

In thus deciding, the court applied the settled principle that, in the absence of legislation by Congress, the States are not denied the exercise of their power to secure safety in the physical operation of railroad trains within their territory, even though such trains are used in interstate commerce. That has been the law since the beginning of railroad transportation. It was not intended that pending Federal action the use of such agencies, which unless carefully guarded was fraught with danger to the community, should go unregulated and that the States should be without authority to secure needed local protection. The requirements of a State, of course, must not be arbitrary or pass beyond the limits of a fair judgment as to what the exigency demands, but they are not invalid because another State in the exercise of a similar power may not impose the same regulation. We may repeat what was said in *Smith* v. *Alabama*, 124 U. S. 465, 481, 482: "It is to be remembered that railroads are not natural highways of trade and commerce. . . . The places where they may be located, and the plans according to which they must be constructed, are prescribed by the legislation of the State. Their operation requires the use of instruments

and agencies attended with special risks and dangers, the proper management of which involves peculiar knowledge, training, skill, and care. The safety of the public in person and property demands the use of specific guards and precautions.  .  .  .   The rules prescribed for their construction and for their management and operation, designed to protect persons and property, otherwise endangered by their use, are strictly within the limits of the local law. They are not *per se* regulations of commerce; it is only when they operate as such in the circumstances of their application, and conflict with the expressed or presumed will of Congress exerted on the same subject, that they can be required to give way to the supreme authority of the Constitution." See also, *Nashville &c. Rwy. Co.* v. *Alabama,* 128 U. S. 96; *Hennington* v. *Georgia,* 163 U. S. 299; *N. Y., N. H. & H. R. R. Co.* v. *New York, supra; Lake Shore & M. S. Rwy. Co.* v. *Ohio,* 173 U. S. 285; *Missouri Pacific Rwy. Co.* v. *Larabee Mills,* 211 U. S. 612; *Missouri Pacific Rwy. Co.* v. *Kansas,* 216 U. S. 262; *Chicago, R. I. & Pac. Rwy. Co.* v. *Arkansas,* 219 U. S. 453; *Minnesota Rate Cases,* 230 U. S. 352, 402, 410.

If there is a conflict in such local regulations, by which interstate commerce may be inconvenienced—if there appears to be need of standardization of safety appliances and of providing rules of operation which will govern the entire interstate road irrespective of state boundaries —there is a simple remedy; and it cannot be assumed that it will not be readily applied if there be real occasion for it. That remedy does not rest in a denial to the State, in the absence of conflicting Federal action, of its power to protect life and property within its borders, but it does lie in the exercise of the paramount authority of Congress in its control of interstate commerce to establish such regulations as in its judgment may be deemed appropriate and sufficient. Congress, when it pleases, may give the rule and make the standard to be observed on the interstate highway.

It is suggested that Congress has acted in the present instance. Reference is made to the act of March 2, 1893, c. 196, 27 Stat. 531, relating to power driving-wheel brakes for locomotives, grabirons, automatic couplers and height of drawbars; to the act of March 2, 1903, c. 976, 32 Stat. 943, amending the act of 1893; to the act of May 27, 1908, c. 200, 35 Stat. 317, 324, 325, authorizing the Interstate Commerce Commission to keep informed regarding compliance with the Safety Appliance Act and to investigate and report on the need. of any appliances or systems intended to promote the safety of railway operations; to the act of May 30, 1908, c. 225, 35 Stat. 476, relating to locomotive ash pans; to the act of April 14, 1910, c. 160, 36 Stat. 298, relating to sill steps, hand brakes, ladders, running boards and hand holds and providing that the Interstate Commerce Commission should after hearing designate the number, dimensions, location and manner of application of these appliances and of those required by the act of 1893; to the detailed regulations prescribed by the Commission, on March 13, 1911, pursuant to this authority; to the act of May 6, 1910, c. 208, 36 Stat. 350, requiring the Commission to investigate accidents and make report as to their causes with such recommendations as they may deem proper; and to the act of February 17, 1911, c. 103, 36 Stat. 913, relating to locomotive boilers.

But it is manifest that none of these acts provides regulations for locomotive headlights. Attention is also called to the investigations conducted by what is known as the 'block-signal and train control board' (organized by the Commission) and the reports of that board with respect to sundry devices and appliances, including headlights. It does not appear, however, either that Congress has acted or that the Commission under the authority of Congress has established any regulation so far as headlights are concerned. As to these, the situation has not been altered by any exertion of Federal power and the

case stands as it has always stood without regulation unless it be supplied by local authority. The most that can be said is that inquiries have been made, but that Congress has not yet decided to establish regulations, either directly or through its subordinate body, as to the appliance in question. The intent to supersede the exercise of the State's police power with respect to this subject cannot be inferred from the restricted action which thus far has been taken. *Missouri Pacific* v. *Larabee Mills, supra; Savage* v. *Jones*, 225 U. S. 501, 533.

The judgment is affirmed.

*Affirmed.*