THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
*v.* CUNARD WHITE STAR, LIMITED, Appellant. (Four
Cases.)

Argued March 2, 1939; decided May 23, 1939.

*Ernest D. North* and *Woodson D. Scott* for appellant. Section 211 of the New York City Sanitary Code should not be construed to prohibit the discharge of smoke for short periods of time by a steamship engaged in foreign commerce where the discharge in unavoidable in the use of proper oil-burning equipment necessary to the operation of the vessel. (*People* v. *Sturgis*, 121 App. Div. 407; *City of Rochester* v. *Macauley-Fien Milling Co.*, 199 N. Y. 207; *People* v. *New York Edison Co.*, 159 App. Div. 786; *St. Louis* v. *Heitzeberg Packing Co.*, 141 Mo. 375; *People* v. *N. Y. C. & H. R. R. R. Co.*, 159 App. Div. 329; *Department of Health* v. *Ebling Brewing Co.*, 38 Misc. Rep. 537; *People* v. *Horton*, 41 Misc. Rep. 309; *People ex rel. Outwater* v. *Green*, 56 N. Y. 466; *Massachusetts Mut. Life Ins. Co.* v. *United States*, 288 U. S. 269.) The ordinance as applied herein is unconstitutional because it amounts to a taking

of property without due process and is an unwarranted interference with foreign commerce. (*People* v. *New York Edison Co.*, 159 App. Div. 786; *Panhandle Eastern Pipe Line Co.* v. *State Highway Comm.*, 294 U. S. 613; *City of Rochester* v. *Macauley-Fien Milling Co.*, 199 N. Y. 207; *City of Buffalo* v. *N. Y. C. R. R. Co.*, 271 N. Y. 658; *Department of Health* v. *Ebling Brewing Co.*, 38 Misc. Rep. 537; *Erie R. R. Co.* v. *Jersey City*, 83 N. J. L. 92; 84 N. J. L. 761; *Penn R. R. Co.* v. *Jersey City*, 84 N. J. L. 716; *Di Santo* v. *Pennsylvania*, 273 U. S. 34; *Schafer* v. *Farmers Grain Co.*, 268 U. S. 189.)

*William C. Chanler, Corporation Counsel* (*James Hail Prothero* and *Paxton Blair* of counsel), for respondent. Section 211 of the Sanitary Code proscribes a nuisance *per se* and is properly applied to steamships engaged in foreign commerce, where as here (a) the discharge is avoidable by the proper use of oil burning equipment on the steamships, or (b) where the defense to the emitted discharges of dense smoke is that they will be chronically unavoidable because of the arbitrary method of operation of the steamships. (*People* v. *New York Steam Corp.*, 278 N. Y. 617; *Tough* v. *Hopkins*, [1904] 1 K. B. 804; *Harmon* v. *Chicago*, 110 Ill. 400; *St. Paul* v. *Haugbro*, 93 Minn. 59; *Northwestern Laundry* v. *City of Des Moines*, 239 U. S. 486; *People* v. *New York Edison Co.*, 159 App. Div. 786; *People* v. *Erickson*, 176 App. Div. 910; *People* v. *Jones*, 164 App. Div. 894; *People* v. *Brooklyn Edison Co.*, 250 App. Div. 874.) Section 211 is a public health law of local application which cannot properly be said to violate either the due process clause or foreign commerce clause of the Federal Constitution or the due process clause of the State Constitution. (*People* v. *New York Edison Co.*, 159 App. Div. 786; *People* v. *Erickson*, 176 App. Div. 910; *People* v. *Jones*, 164 App. Div. 894; *People* v. *Brooklyn Edison Co.*, 250 App. Div. 874; *Sherlock* v. *Alling*, 93 U. S. 99; *Escanaba Co.* v. *Chicago*, 107 U. S. 678; *Compagnie Francaise* v. *Louisiana*, 186 U. S. 380; *Olsen* v. *Smith*, 195 U. S. 332; *People* v. *Rohde*, 152 Misc. Rep. 526; *State*

v. *Leary*, 46 R. I. 197; *Harmon* v. *Chicago*, 110 Ill. 400; *Northwestern Laundry* v. *City of Des Moines*, 239 U. S. 486.) It is no defense to a violation of a public health law that a particular steamship has been so constructed or is so operated as to make the violations a " necessary incident " to the defendant's carrying on its business. (*Bohan* v. *Port Jervis Gas-Light Co.*, 122 N. Y. 18; *Pritchard* v. *Edison Electric Illuminating Co.*, 92 App. Div. 178; 179 N. Y. 364; *Baltimore & Potomac R. Co.* v. *Fifth Baptist Church*, 108 U. S. 317; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10; *Weinberg* v. *Rodgers & Hagerty, Inc.*, 100 Misc. Rep. 329; 179 App. Div. 906; *De Muro* v. *Havranek*, 153 Misc. Rep. 787; *People* v. *Detroit White Lead Works*, 82 Mich. 471; *Moses* v. *State*, 58 Ind. 185; *Winslow* v. *City of Bloomington*, 24 Ill. App. 647; *Hearst* v. *N. Y. C. & H. R. R. R. Co.*, 215 N. Y. 268; *Friedman* v. *N. Y. & Harlem R. R. Co.*, 89 App. Div. 38; 180 N. Y. 550.) As to the steamship *Corinthia*, the evidence amply supports the conviction; there was no evidence that the discharge of dense smoke was unavoidable in the sense that it could not have been prevented; the defense that the steamship had proper combustion equipment was irrelevant to show that the dense smoke emitted could not have been prevented. (*People* v. *New York Steam Corp.*, 253 App. Div. 806; 278 N. Y. 617; *People* v. *New York Edison Co.*, 159 App. Div. 786; *People* v. *Erickson*, 176 App. Div. 910; *People* v. *Jones*, 164 App. Div. 894; *People* v. *Brooklyn Edison Co.*, 250 App. Div. 874.)

LEHMAN, J. Informations charging the defendant with three violations of section 211 of the Sanitary Code of the City of New York (New York Code of Ordinances, ch. 20, art. 12) were tried together. One information alleges that the defendant, on the 20th day of October, 1937, " did unlawfully cause, suffer and allow dense smoke to be discharged from the smoke stack of steamship *Queen Mary* while tied up at Pier 90, North River, in the City, County and State of New York." Another information contains similar allegations concerning smoke from the

steamship *Laconia* while tied up at Pier 54, North river. The third information alleges that dense smoke was discharged from a chimney located on Pier 90. The defendant was convicted on all three charges. Appeals taken to the Appellate Division from the judgments of conviction were heard and decided together. The appellant has appealed from the judgment of the Appellate Division, affirming the three judgments of conviction, but states in its brief that it desires " to present for the decision of this court only the questions involved in the application of the New York City Smoke Ordinance to steamships." It does not challenge the conviction upon the charge that it permitted dense smoke to be discharged from the chimney on Pier 90.

The evidence establishes that dense smoke was discharged on the days specified in the informations from the steamships *Queen Mary* and *Laconia*. The *Queen Mary* was under observation by an inspector of the Health Department from seven A. M. to eight-forty A. M. The discharge of dense smoke was not continuous but was noticed during five short periods aggregating twenty-four minutes. At that time the steamship was being prepared for a voyage which started at ten-thirty that morning. The same inspector observed a discharge of smoke on the *Laconia* for a period of five minutes not long before that ship left port.

The validity of the ordinance is not challenged, if its scope is limited to prohibition of the discharge of smoke, avoidable by the use of modern appliances and of methods which are practicable. So limited, the ordinance is reasonably calculated to protect the health and comfort of residents and visitors in the city of New York, and the Legislature has delegated to city officers the power to pass such ordinances. The defendant is engaged in foreign commerce which, though subject to regulation by the Congress of the United States, is not immune from the police power. The defendant does not claim such immunity. It asks the court to reverse the conviction for violation of the ordinance, on the ground that the ordinance is unreasonable and the police power does not justify unreasonable obstruction of its business as carrier in foreign commerce.

The defendant was convicted in spite of an offer to prove that " all due and reasonable precautions were taken on board the ships at the time of each of these charges with respect to the reduction of smoke, and that such smoke as may have been created was only such smoke as is absolutely unavoidable under the conditions prevailing on those ships." It says that the court excluded such evidence on the ground that it would be immaterial because any discharge of smoke, even if unavoidable, would constitute a violation of the ordinance, stating: " I will hold that the smoke came out of those funnels and in the other case from the structure, therefore, you were guilty from the testimony given by Inspector Kirchner and your own testimony; on the entire case, I find the Defendant guilty as charged." The defendant had previously shown that its steamships are provided with oil burning boilers and with up-to-date and efficient smoke prevention appliances, and the court stated that it so found. The defendant admits, however, that at times smoke is discharged from its steamships, especially when cold boilers are being " lighted up " and when a ship is entering or leaving port and the demands for steam fluctuate.

Great cities depend for existence upon industry and commerce there conducted; but industry and commerce, if conducted in manner which will produce the greatest economic return, may create conditions which injure the public health and welfare. In the exercise of the police power, the State may require industry and commerce to be carried on in manner which will promote the public health and welfare, though such requirement may increase the cost of doing business. Conflicting considerations of business advantage and the public health and welfare must be weighed by the Legislature, and the courts may not interfere unless interference with lawful business is manifestly unreasonable. None the less, there is a point beyond which the Legislature may not go and the courts must refuse to enforce a statute, ordinance or regulation in those rare cases where a legislative body has transcended the con-

stitutional restrictions upon its power. Even in the exercise of the police power the State may not obstruct or directly burden interstate or foreign commerce. (*Di Santo* v. *Pennsylvania*, 273 U. S. 34.) If the prohibition against the discharge of dense smoke is so applied that a steamship company may be found guilty of a violation because, in the operation of great liners with up-to-date equipment, dense smoke is discharged for a few minutes while a vessel is being prepared for departure, though it is shown that, even in the exercise of the greatest care, it would be impossible or impractical to avoid such smoke, then it seems to me clear beyond question that the ordinance is unreasonable, obstructs foreign commerce and exceeds the power of the State.

Perhaps the evidence, quoted in the opinion of Judge O'BRIEN, which was elicited upon cross-examination of defendant's witnesses, might, if unexplained, be sufficient to sustain a finding that the emission of the dense smoke might have been avoided without undue interference with the operation of the steamship. Read with the testimony given by the same witness on direct, these admissions are at most equivocal and certainly were subject to explanation or even contradiction through other proof; but here offer of such proof was, as I have pointed out, rejected. In my opinion, the colloquy of court and counsel leaves no question that the offer of such proof was made and rejected and that the ruling of the trial court was unambiguous and may be reviewed by this court. I do not, however, labor that point by argument or attempt demonstration by quotation of the full colloquy; for affirmance of the judgment of conviction, if it is based on the ground that the offer of proof was insufficient and that the court was justified in passing judgment upon the evidence actually presented, would have no consequences other than the payment by the defendant of small fines.

The important questions which the appellant seeks to bring up for review would even then be presented upon the appeal from a judgment of the Appellate Division, affirming

a conviction of the same defendant for the discharge of smoke from the steamship *Carinthia,* which has been argued here at the same time as the judgment affirming conviction in the *Queen Mary* and *Laconia* cases, though the information was tried after the conviction in the earlier cases had been affirmed by the Appellate Division. In the *Carinthia* case the inspector testified that he observed smoke being discharged from the steamship *Carinthia* from ten-forty-eight to ten-fifty-three A. M. on October 22, 1937. The vessel had arrived that morning. By testimony which is not challenged the defendant showed that an hour after a vessel has arrived at the dock and the passengers have left, there is need for less steam. Then there is change to smaller burners and the change causes smoke for about five minutes. The defendant also showed by its chief engineer that the steamship had proper equipment and that smoke is unavoidable when the burners are changed. There is no evidence or even contention by the People that smoke could be avoided if the steamship company allows any burner or boiler to become cool while the vessel is in dock and less steam is required. A witness testified without contradiction or even cross-examination that if the change to smaller burners were not made, the reduced demand for steam " would necessitate us putting fires out and lighting them up again frequently, which would cause smoke."

In the *Carinthia* case the People argue that the conviction must be sustained because " It is no defense to a violation of a public health law that a particular steamship has been so constructed and is so operated as to make continued violations a ' necessary incident ' to the defendant's carrying on his business." That might be true if construction or operation is improper or if change there were practical. Here, however, there is no suggestion that either operation or construction is not in conformity with the highest standards or that occasional emission of smoke, for a few minutes on the day a vessel enters or leaves port, could be avoided by change which would not unreasonably obstruct the operation of the steamship. The defendant's

witnesses were not even cross-examined on those matters by the Corporation Counsel, and the record is bare of evidence like that quoted by Judge O'BRIEN upon the appeal in the other cases. The case was tried and decided on the theory that a carrier engaged in foreign commerce may be convicted of violation of the ordinance whenever dense smoke is discharged even for a brief period, though such discharge is unavoidable by any means which are practicable.

The judgments of the Appellate Division and of the Court of Special Sessions of the City of New York (Municipal Term) convicting the defendant for the discharge of smoke from the steamships should be reversed and new trials ordered.

The judgment of the Appellate Division affirming the judgment of the Court of Special Sessions of the City of New York (Municipal Term) convicting the defendant for the discharge of smoke from the chimney on Pier 90 should be affirmed.

O'BRIEN, J. (dissenting). Three violations by defendant of the provisions of section 211 of the Sanitary Code of the City of New York are charged. The first alleges that steamship *Queen Mary*, while docked at Pier 90, North river, discharged dense smoke; the second that steamship *Laconia*, while docked at Pier 54, North river, also discharged dense smoke; the third that dense smoke was discharged from a chimney owned by defendant on Pier 90, North river.

Section 211 provides: " No person shall cause, suffer or allow dense smoke to be discharged from any building, vessel, stationary or locomotive engine or motor vehicle, place or premises within the city of New York or upon the waters adjacent thereto, within the jurisdiction of said city. * * *."

The People proved the emission of dense smoke from both the ships and from the chimney on the pier. This fact is not denied. On the trial defendant's counsel stated in respect to the ships: " I have not denied that we get smoke. We know we do. We cannot help it. We always do.

The discharge of smoke, under those circumstances, was from our point of view unavoidable and accidental in the sense that it simply could not be prevented by the exercise of the greatest amount of care."

The *Queen Mary* and the *Laconia* are both oil burners. The boilers on the *Queen Mary* were started about five o'clock in the morning, according to the testimony of defendant's witness, and the ship was still tied to the pier as late as eight-forty that morning. She sailed that day at ten-thirty. Heavy black smoke was discharged, according to the observation of the People's witness, from seven-twenty-two to eight-thirty-five. Here is testimony by defendant's witness: " Q. You cannot actually control the fire so as not to have smoke? A. *We do that.* Q. How do you do it? A. By lighting up one at a time. Q. And with only one or two boilers lit up, you do not have dense smoke, is that right, under normal conditions? A. No, we do not. But when she is getting ready for sea, there will come a time when you have a great demand for steam, that is the time when she is leaving port. Q. And how many boilers do you light up then? A. *Every one of them.* Q. And all at about the same time, isn't that right? A. *About the same time.* * * * Q. Suppose you only started one boiler at a time, you wouldn't have as much dense smoke coming from those stacks as if you started them all at the same time, would you? A. No. Q. So, therefore, to that extent, you can control it? A. *We can control the quantity that would be emitted at that time.*" The same witness testified that the ship starts getting up steam three or four hours before it sails. Another witness for defendant testified that, after the boilers on *Queen Mary* are steamed, his duty is to watch the smoke and that he did see smoke that day, sometimes black and sometimes thick brown. He reported to his superior that the funnel was " smoking heavily." The People are correct in their argument that the emission of this dense smoke was not unavoidable but could have been controlled. The practice pursued by defendant is admitted to be cheaper and more convenient. In respect to steam-

ship *Laconia*, the evidence is clear in respect to the emission of dense, black smoke between nine-thirteen and nine-eighteen A. M. The practice regarding the lighting of the burners on this ship is the same as that prevailing on the *Queen Mary*.

Appellant's brief presents no argument respecting the correctness of the conviction in connection with the emission of smoke from the chimney on the pier.

The argument that this enactment tends to burden foreign commerce to such an extent as to render it unconstitutional cannot be sustained. First of all, it is a health ordinance and, in respect to such matters and many others, a State possesses extensive police power, even though interstate or foreign commerce may be directly involved. (*Olsen* v. *Smith*, 195 U. S. 332; *Shafer* v. *Farmers Grain Co.*, 268 U. S. 189 at p. 199; *People* v. *Rueffer*, 279 N. Y. 389, and cases therein cited at p. 392.)

The judgment should be affirmed.

CRANE, Ch. J., HUBBS and RIPPEY, JJ., concur with LEHMAN, J.; O'BRIEN, J., dissents as to the steamships in opinion in which LOUGHRAN and FINCH, JJ., concur.

Judgment accordingly.