[Crim. No. 15706.   Second Dist., Div. Four.   Dec. 23, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Defendant and Appellant.

John J. Balluff and Donald W. Ricketts for Defendant and Appellant.

Evelle J. Younger, District Attorney, Harry Wood and Robert Lederman, Deputy District Attorneys, for Plaintiff and Respondent.

WAPNER, J. pro tem.*—On June 7, 1968, appellant was convicted of violating section 24242 of the Health and Safety Code. Defendant seeks a reversal of that conviction.

We shall now examine the section in question and the facts as they were presented to this court pursuant to an engrossed statement on appeal. Section 24242, California Health and Safety Code, provides: ''A person shall not discharge into the atmosphere from any single source of emission whatsoever any air contaminant for a period or periods aggregating more than three minutes in any one hour which is: (a) As dark or darker in shade as that designated as No. 2 on the Ringel-

---

*Assigned by the Chairman of the Judicial Council.

mann Chart, as published by the United States Bureau of Mines, or (b) Of such opacity as to obscure an observer's view to a degree equal to or greater than does smoke described in subsection (a) of this section."

The testimony disclosed that the emissions complained of occurred when the engine started moving again after stopping. Defense witnesses testified and explained the operation of a diesel locomotive.

Without going into the technical testimony elicited during the course of the trial it is enough for our purposes here to relate that the testimony disclosed that from the time the diesel engine starts moving from a standstill there is from 1-3 minutes during which the engine emits black smoke. This is what the witness called "lag-time" black smoke. Defense witnesses further testified and the evidence is undisputed that there is now no known way to prevent black smoke from being emitted when the engine starts from a standstill. The witness stated that it would be impossible to operate the railroad in Los Angeles County without producing this "lag-time smoke" each time an engine started up from a standstill.

There is no denying that the purpose of section 24242, Health and Safety Code, (health of the public) is a valid one. However, the question here involved is whether or not the particular section places an undue and unreasonable burden on appellant's operations in interstate commerce. Here the evidence is uncontradicted that appellant as of now has no known method of curing the defect in question.

*Huron Portland Cement Co. v. Detroit,* 362 U.S. 440 [4 L.Ed.2d 852, 80 S.Ct. 813, 78 A.L.R.2d 1294] held that (1) the City of Detroit's smoke abatement code was a proper exercise of the police power; (2) the state regulation had not been preempted by federal action; (3) application of the city code to vessels engaged in interstate commerce did not impose an impermissible burden on interstate commerce; (4) the mere possession of a federal license did not immunize a ship from the operation of the normal incidents of local police power, not constituting a direct regulation of commerce. Appellants, in contending that the ordinance could not constitutionally be applied to them, did not argue or present to the court the proposition that violation of the ordinance could not be avoided. The U.S. Supreme Court, in its statement of the facts, stated that "Structural alterations would be required in order to insure compliance with the Code." No other reference is made in the opinion to such alteration. The Supreme Court of Michigan (355 Mich. 227 [93 N.W.2d 888], which

was affirmed by the U.S. Supreme Court) stated: "If this ordinance sought to prevent the emission of all smoke, or if adequate means of smoke control were not available, then a different question might be before us. But this ordinance concededly seeks to outlaw only the emission of smoke of such density that can readily be prevented by the use of modern smoke control equipment. All it costs is money." (93 N.W.2d p. 892) The question was not presented as to whether the ordinance could be applied if appellant had made a showing that no methods were available by which they could avoid violation. It is because of this that we do not feel the *Huron* case is controlling.

In *People* v. *Cunard White Star* (1939) 280 N.Y. 413 [21 N.E.2d 489], it was held that a regulation of smoke is valid only if limited to prohibiting discharge of smoke avoidable by the use of modern appliances and of practicable methods: In that case the trial court had rejected an offer of proof by defendant to the effect that all due and reasonable precautions had been taken and that such smoke as may have been created was only such smoke as is absolutely unavoidable, the court stating that such evidence would be immaterial because any discharge of smoke, even if unavoidable, would constitute a violation of the ordinance. Upon appeal the conviction was reversed and a new trial ordered. The court stated: "If the prohibition against the discharge of dense smoke is so applied that a steamship company may be found guilty of a violation because, in the operation of great liners with up-to-date equipment, dense smoke is discharged for a few minutes while a vessel is being prepared for departure, though it is shown that, even in the exercise of the greatest care, it would be impossible or impractical to avoid such smoke, then it seems to me clear beyond question that the ordinance is unreasonable, obstructs foreign commerce and exceeds the power of the State." (21 N.E.2d p. 490)

We conclude, therefore, that the statute in question as applied to appellant herein under the circumstances shown by this record constitutes an unreasonable burden upon appellant's operations and as such substantially impedes the free flow of interstate commerce which is prohibited by the Constitution of the United States.

The judgment is reversed.

Files, P. J., and Jefferson, J., concurred.