Ohringer, M.
The complaint alleges that on August 23, 1951, at or about 10:43 a.m., and at divers times prior thereto, Bensen Jacobs, an inspector of the smoke-control bureau, observed *727 dense smoke emitting from the smokestack attached to the steam boilers in the cellar of premises 568 Broadway, Manhattan, New York City. This dense smoke was observed emitting therefrom between 10:23 and 10:25 a.m., 10:29 and 10:30 a.m., and 10:43 and 10:49 a.m. of the day in question.
The stipulated facts show:
1. That the defendant John Oswald is a licensed engineer in charge of the operation of the boiler, furnace and heating-equipment in the building in question and was so in charge on August 23, 1951;
2. That the building was equipped with the latest and most modern smoke-abatement equipment that has been designed and that has been available for installation and use in similar properties in the city of New York;
3. That it was installed on or about April 17, 1951, and was in full operation on August 23, 1951;
4. That the equipment conforms to the recommendations made by the Bituminous Coal Research, Inc., the national research agency of the coal industry;
5. That this equipment was installed in accordance with section D26-1.0 of the Administrative Code of the City of New York, and all of the necessary installation permits and operating certificates required by the bureau of smoke control had been obtained, and that the equipment was lawfully operating-in accordance therewith;
6. That on August 23, 1951, the owners of the building- were using a good grade mixture of soft and hard coal; the boilers are air-jet operated, resulting in a forced overdraft which makes for maximum combustion, thereby eliminating the smoke residues, namely, the emission of dense smoke as far as scientifically known or possible at this time;
7. That smoke is finely divided carbon or soot resulting from the decomposition of hydrocarbon vapors when heated to high temperature with insufficient oxygen to burn them;
8. That since this form of carbon is difficult to burn, the fundamental principle of smoke abatement is not to burn smoke after it is formed but to prevent its formation in the first place ;
9. That overfire air jets do this by forcing air into the furnaces where it is needed and mixing it with unburned gases. This installation, as well as all other overfire air installations, cannot completely eliminate smoke under all conditions. Improper coal, as well as starting- a cold boiler, will under certain circumstances produce momentary smoke in spite of the over air jets;
*728 10. That the use of overfire steam air jets is intended to and does reduce the emission of dense smoke to short and infrequent periods of time;
11. That the firemen in the employ of the owners of the said building and at the times in question, on August 23, 1951, had just fired the boilers, fresh coal had been placed upon the beds and the jets were in operation.
The resultant smoke which the inspector observed was emitted in spite of all of the precautions, safeguards and equipment.
If the defendant did everything that could reasonably be done to prevent the emission of dense smoke and the emission of such smoke was unavoidable, should there be a conviction?
Section D26-1.0 of the Administrative Code prohibits the emission of dense smoke. Pursuant to this provision of the code, the smoke-control bureau promulgated on August 1, 1950, effective October 1, 1950, certain rules and regulations. The present prosecution is based upon a violation of these rules and regulations which state that the emission of dense smoke is prohibited, with the single exception of when a firebox is being cleaned or a new fire is being built in a cold furnace, in either of which event dense smoke may be emitted for a period of four consecutive minutes. (Rules & Regulations of N. Y. C. Dept, of Air Pollution Control, rule 1, subd. 1.1, pars. 1.1.1, l.l.l.l.)
This legislation is regulatory in character and must be interpreted in the light of its necessity and the purpose to be accomplished. It is malum prohibitum and regardless of the efforts made by any individual to avoid a violation of the law or regardless of the intent, if the prohibited acts occur that in and of itself is sufficient to constitute a violation. But this rule is subject to reason and the court must not close its eyes to obvious facts. The law does not seek to compel a man to do that which he cannot possibly perform. (Walden v. City of Jamestown, 178 N. Y. 213, 217.)
A reasonable interpretation should be made and if the adduced proof shows that a defendant has complied with the literal requirements of the law as nearly as it is practicable to do so under the prevailing circumstances, and that he has adopted the best devices presently known to all, then the letter and spirit of the legislation have been complied with. In interpreting statutes sense must be brought out of the words used. (McCluskey v. Cromwell, 11 N. Y. 593.)
In People v. Cunard White Star (280 N. Y. 413) the court indicated that a legislative body may not constitutionally prohibit dense smoke discharges which are unavoidable by any means which are practicable (supra, p. 421); that an ordinance *729 or statute would be valid only if its scope is limited to prohibition of the discharge of smoke avoidable by the use of modern appliances and of methods which are practicable (supra, p. 417). The People have conceded that the appliances used in this case were modern and have offered no proof that the emission of the dense smoke was avoidable. In other cases decided by this court there were factual issues raised as to avoidability and methods being used.
In People v. Bevevino (202 Misc. 723) my learned colleague, Magistrate Pagnucco, very ably passed upon the constitutionality and reasonableness of the rules and regulations under consideration and no further observation need be made on these points that have been raised by the defendant.
Upon the facts as presented in this case, the court finds the defendant not guilty of the presented charge.