Burke I. Burke, J.
In 1942 the Town of Cheektowaga adopted a zoning ordinance dividing the town into use districts, with a classification of the areas and the uses permitted therein.
Uses listed for land in a Second Industrial District include livestock housing, railroad yards, railway car manufacture, grain elevators, flour mills, sugar refining, chemical plants, coke ovens, smelting, asphalt, soap, sauerkraut, creosote and sulphuric acid manufacture, automobile wrecking plants, poultry slaughterhouses, skin curing or tanning, sewage disposal plants, meat packing, distillation of bones, steel furnaces, rolling mills, etc.
Into such a haven of diversified opportunity moved the U. S. Rubber Reclaiming Company, Inc., with construction of a sizable plant for the reclaiming of rubber in 1947. Eight or ten years later real estate development and home building enterprise brought the plant numerous residential neighbors. In July, 1958, the Cheektowaga Town Board adopted an air-pollution ordinance. And in June, 1959, informations were filed in the Justice Court, Town of Cheektowaga, charging four officials of the reclaiming company with violations of section 8.3.1 of said ordinance, in that they unlawfully allowed dust, fumes and nuisance odors to emanate from the 'plant premises, and constitute a nuisance to vicinity residents.
The four defendants were convicted after trial and, alleging various errors, they appeal from such convictions.
*739 Proof offered by the prosecution included testimony by local residents as to odors and smells, and testimony by expert witnesses offered to show that the alleged pollution could have been reduced materially by the utilization of certain modern equipment designed for this purpose.
Without considering the question of whether defendants controlled or participated in the activities complained of, we address ourselves to the sufficiency of the proof that defendants failed to use standards of cleanliness and control known and customary in the trade, and failed to use available means by which the alleged emissions could be significantly reduced.
The decision in People v. Savage (1 Misc 2d 337 [Supreme Court, Erie County, 1955], affd. 309 N. Y. 941), holds that in construing a pollution ordinance containing an absolute prohibition against the discharge of prohibited materials, similar to the one under discussion, a rule of reason must be applied.
The present case resembles the situation discussed by the Court of Appeals in People v. Cunard White Star (280 N. Y. 413, 420), wherein Judge Lehman states: “the People argue that the conviction must be sustained because ‘ it is no defense to a violation of a public health law that a particular steamship has been so constructed and is so operated as to make continued violations a “ necessary incident ” to the defendant’s carrying on his business.’ That might be true if construction or operation is improper or if change there were practical.”
Similarly in People v. Dayton Cleaners & Dyers Corp. (251 App. Div. 332, 333), the court said: “ The proofs fail to show that the defendant’s business is unlawful * * # or that the noise, odors, and dirt complained of do not necessarily result from the proper conduct of the business * * * In view of the character of the neighborhood and the evidence as to defendant’s equipment and manner of conducting its business, the proofs are insufficient to sustain the conviction.”
And in the more recent case of People v. Oswald (1 Misc 2d 726, 728), the court reiterated the principle applicable here in the following language: “ The resultant smoke which the inspector observed was emitted in spite of all the precautions, safeguards and equipment. If the defendant did everything that could reasonably be done to prevent the emission of dense smoke and the emission of such smoke was unavoidable, should there be a conviction?” — The court answered its own question by finding the defendant not guilty.
Testimony of two of the expert witnesses for the prosecution is significant. George Schreiber, president of Schneible Company of Birmingham, Michigan, stated he believed a 95% *740 efficiency in the reduction of odor causing emissions would he an excellent operation, and that equipment his company proposed to install might be less efficient, while John C. Quinlan, Deputy Commissioner of Public Works, City of Buffalo, New York, testified that the Johnson Marsh scrubbers, control equipment used at the rubber plant, were 99% efficient in the removal of fumes and abatement of microscopic dust.
Violation of the ordinance in question by these defendants has not been established. Defendants’ motion for dismissal of the information at the close of the entire case should have been granted. We pass upon no other question. The judgments appealed from are reversed, the informations dismissed, and the fines remitted.