Jan Marie WICKSTROM, by H.S. WICKSTROM and John Ring, conservators of the person and Estate of Jan Marie Wickstrom, Appellant,

v.

MAPLEWOOD TOYOTA, INC., et al., Respondents.

No. C1–87–1231.

Court of Appeals of Minnesota.

Dec. 22, 1987.

Review Denied Feb. 17, 1988.

James A. Jardine, John R. O'Brien, Pierre N. Regnier, Jardine, Logan & O'Brien, St. Paul, for appellant.

David W. Graves, Jr., Wayne Struble, Minneapolis, for respondents.

Stephen M. Shapiro, Mayer, Brown & Platt, Chicago, Ill., for amici curiae The Product Liability Advisory Council, Inc., The Automobile Importers of America, Inc., and The Motor Vehicle Manufacturers Ass'n of the U.S., Inc.

Heard, considered and decided by FORSBERG, P.J., and LANSING and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Jan Wickstrom brought a products liability action against Toyota Motor Corporation and its chain of distributors (hereinafter Toyota) alleging, *inter alia*, that an alternative safe design to remedy design defects in Wickstrom's Toyota Tercel was the use of an air bag in conjunction with the three-point seatbelt. Toyota moved for partial summary judgment on this portion of the claim. The trial court held that Wickstrom's "air bag" claim was preempted by federal law and directed entry of final judgment. Wickstrom appeals from the judgment. We affirm.

## FACTS

In March 1983, Jan Wickstrom was driving her 1983 Toyota Tercel when she was struck head-on by a fleeing bank robber. Wickstrom was wearing her seatbelt and shoulder belt but was severely injured as a result of the accident. Wickstrom claimed her Tercel was negligently designed and manufactured and unreasonably dangerous for its intended purpose because, among other things, the car did not contain air bags.

## ISSUE

Is Wickstrom's claim that her car was defective and unreasonably dangerous because of Toyota's failure to install air bags expressly or impliedly preempted by the National Traffic and Motor Vehicle Safety Act?

## ANALYSIS

The National Traffic and Motor Vehicle Safety Act (NTMVSA) provides:

(a) The Secretary shall establish by order appropriate Federal motor vehicle safety standards. Each such Federal motor vehicle safety standard shall be practicable, shall meet the need for motor vehicle safety, and shall be stated in objective terms.

\* \* \* \* \* \*

(d) Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard. \* \* \*

\* \* \* \* \* \*

(f) In prescribing standards under this section, the Secretary shall—

(1) consider relevant available motor vehicle safety data, including the results of research, development, testing and evaluation activities conducted pursuant to this chapter;

(2) consult with the Vehicle Equipment Safety Commission, and such other State or interstate agencies (including legislative committees) as he deems appropriate;

(3) consider whether any such proposed standard is reasonable, practicable and appropriate for the particular type of motor vehicle or item of motor vehicle equipment for which it is prescribed; and

(4) consider the extent to which such standards will contribute to carrying out the purposes of this chapter.

15 U.S.C.A. § 1392 (1982). In addition, the NTMVSA provides that:

Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law.

15 U.S.C.A. § 1397(c).

In response to Congress' directive, the Department of Transportation promulgated Federal Motor Vehicle Safety Standard 208 which gave automobile manufacturers the choice of using seatbelts, air bags, or a combination of seat belts and air bags. *See* 49 C.F.R. § 571.208 (1982).

■ If Wickstrom's suit against Toyota leads to a verdict for Wickstrom, such a verdict reduced to judgment is a form of state action, at least as it relates to preemption. *See San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959); *Vanover v. Ford Motor Co.*, 632 F.Supp. 1095, 1096 (E.D.Mo.1986). Air bags clearly involve the same aspect of performance as seat belts, that of passenger restraint. A state tort award for failure to install air bags would conflict with the choices given manufacturers under Safety Standard 208.

Such a result is preempted by 15 U.S.C.A. § 1392(d).

Wickstrom contends the following "savings clause" of the NTMVSA preserves all common law claims and therefore her air bag claim as well.

Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law.

15 U.S.C.A. § 1397(c).

■ General savings clauses will not preserve common law claims which interfere with or frustrate the purposes of the act. *See International Paper Co. v. Ouellette*, — U.S. ——, 107 S.Ct. 805, 812, 93 L.Ed.2d 883 (1987) (Congress does not intend to undermine carefully drawn statutes through general savings clauses). The purpose of such savings clauses is

not to nullify other parts of the act, or to defeat rights or remedies given by preceding sections, but to preserve all existing rights which were not inconsistent with those created by the statute.

*Blackburn v. Doubleday Broadcasting Co.*, 353 N.W.2d 550, 555 (Minn.1984) (quoting *Pennsylvania Railroad v. Puritan Coal Mining Co.*, 237 U.S. 121, 129, 35 S.Ct. 484, 487, 59 L.Ed. 867 (1915)). The clear meaning of the NTMVSA clause is that compliance with federal standards will not protect automobile manufacturers from liability for design defects in connection with matters *not* covered by federal standards.

Even if Wickstrom's air bag claim was not expressly preempted it is impliedly preempted.

[I]f Congress has not displaced state regulation entirely, it may nonetheless preempt state law to the extent that the state law actually conflicts with federal law. Such a conflict arises when compliance with both state and federal law is impossible, or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Michigan Canners & Freezers Association, Inc. v. Agricultural Marketing and Bargaining Board,* 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984) (citations omitted).

The "full purposes and objectives of Congress" in enacting the NTMVSA are:

> to reduce traffic accidents and deaths and injuries to purposes resulting from traffic accidents. Therefore, Congress determines that it is necessary to establish motor vehicle safety standards for motor vehicles and equipment in interstate commerce; * * *.

15 U.S.C.A. § 1381. Based on the legislative history, Congress clearly was aware of the potentially increased safety aspects provided by air bags. However, air bags also present problems. The reliability of air bags is unproven and accidental air bag inflation is a potential hazard to a car's occupants. Cost is another consideration. *See* Waters, *Air Bag Litigation: Plaintiffs, Start Your Engines,* 1 Pepperdine L.Rev. 1063, 1072–73 (1986).

All of these arguments have been presented to Congress and the Department of Transportation and yet the Department has specifically chosen not to make air bags mandatory. Not only that, 15 U.S.C.A. § 1410b prohibits the Department of Transportation from requiring air bags without prior congressional approval. *See* 15 U.S.C.A. § 1410(b)–(d). Congress has chosen to give manufacturers a choice of occupant restraint systems. A court decision creating common law liability for the failure to install air bags

> will effectively force automobile manufacturers to choose the air bag option over other statutorily approved options. An automobile manufacturer faced with the prospect of choosing the air bag option, or facing potential exposure to compensatory and punitive damages for failing to do so, has but one realistic choice. *A court decision that removes the element of choice authorized in the occupant crash safety regulations will frustrate the statutory scheme.*

*Baird v. General Motors Corp.,* 654 F.Supp. 28, 32 (N.D.Ohio 1986) (emphasis added). In *Baird,* the court found that air bag claims were impliedly preempted.

The trial court recognized that the legislative history makes it clear that a "significant subsidiary purpose—itself intended to promote the primary goal—was to create uniform motor vehicle safety standards." Allowing individual state juries and courts to create different standards clearly would frustrate this purpose. *Accord Cox v. Baltimore County,* 646 F.Supp. 761, 764 (D.Md.1986); *Vanover v. Ford Motor Co.,* 632 F.Supp. 1095, 1096 (E.D.Mo.1986).

### DECISION

Wickstrom's claim with regard to the absence of air bags in her automobile is expressly and implicitly preempted by federal law.

Affirmed.