John FORSTER, et al., Appellants,

v.

**R.J. REYNOLDS TOBACCO COMPANY, Erickson Petroleum Corporation, d.b.a. Holiday Station Stores, Inc., Respondents.**

No. C1–87–2170.

Court of Appeals of Minnesota.

May 3, 1988.

Review Granted June 29, 1988.

---

Michael L. Weiner, Richard G. Hunegs, DeParcq, Hunegs, Stone, Koenig & Reid, P.A., Minneapolis, for John Forster, et al.

James S. Simonson, William L. Killion, David M. Coyne, Gray, Plant, Mooty, Mooty, & Bennett, P.A., Minneapolis, John L. Strauch, William T. Plesec, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for R.J. Reynolds Tobacco Co.

Mark A. Gwin, Katherine A. McBride, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, for Erickson Petroleum Corp., d.b.a. Holiday Station Stores, Inc.

Alan B. Morrison, Public Citizen Litigation Group, Washington, D.C., amicus curiae American Cancer Society, et al.

Michael V. Ciresi, Robert B. Walburn, Robins, Zelle, Larson & Kaplan, Minneapolis, amicus curiae Minnesota Trial Lawyers Assn.

Heard, considered, and decided by KALITOWSKI, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

KALITOWSKI, Judge.

Appeal arises from the trial court's order granting respondents' motion for summary judgment on the grounds that appellants' claims are preempted by the Federal Cigarette Labeling and Advertising Act.

### FACTS

John Forster (now deceased) and Ann Forster are appellants in this action against respondents R.J. Reynolds Tobacco Company (Reynolds), manufacturers of Camel cigarettes and Erickson Petroleum Corporation d.b.a. Holiday Station Stores (Erickson), retailer from which John Forster purchased cigarettes.

In November, 1984 John Forster was diagnosed as having inoperable lung cancer. In March, 1985 John and his wife Ann Forster commenced this product-liability action against respondents. In June, 1985, John Forster died of lung cancer.

Prior to John Forster's death the parties agreed this action could be amended to a wrongful death action. The amendment had not been completed prior to the trial court's ruling on respondents' motions for summary judgment.

On May 20, 1987, respondents moved the trial court for summary judgment. The trial court granted respondents' motion ruling all of appellants' claims are preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331–40.

Appeal arises from the grant of respondents' motion for summary judgment.

### ISSUE

Does the Federal Cigarette Labeling and Advertising Act preempt appellants' tort actions against respondents?

### ANALYSIS

I. *Introduction*

This is a product liability action based on the allegation that John Forster's wrongful death from lung cancer was caused by respondent R.J. Reynold's Camel cigarettes.

However, this opinion does not address the *merits* of a cause of action based upon injury allegedly sustained by cigarette smoking. Nor does it review Congress' decision to permit the tobacco industry to continue to manufacture and sell cigarettes and allow the consumer to remain free to choose to smoke.

Rather, our holding is founded on the strong presumption, basic to our system of federalism, that state police powers are not superseded by federal actions absent clear and unmistakable congressional intent or absolute necessity.

Appeal arises from the trial court's order of summary judgment dismissing appellants' claims against respondents on a finding of implied federal preemption of state tort law. The trial court relied heavily on a decision of the United States Court of Appeals for the Third Circuit[1], which found tort claims against a cigarette manufacturer to be *impliedly* preempted by the Federal Cigarette Labeling and Advertising Act.[2]

1. *Cipollone v. Liggett Group, Inc.,* 789 F.2d 181 (3rd Cir.1986).

2. 15 U.S.C. § 1331–40.

The holding of the Third Circuit is not binding on Minnesota courts; moreover, we find the decision of the federal trial court which was reversed by the Third Circuit to be well-reasoned and persuasive.[3]

While our disagreement with the trial court's holding is buttressed by the presumption against preemption, it is premised on our reading of the federal law. Congress was *not* silent on the subject of preemption in the Federal Cigarette Labeling and Advertising Act. The Act contains an express preemption of any "requirement or prohibition based on smoking and health * * * with respect to the advertising or promotion of any cigarettes * * *." Where Congress has spoken on the subject of preemption and not explicitly preempted the fundamental right to bring a state tort action, we find it inappropriate and wholly unnecessary to strain to find implied preemption.

## II. *The Federal Cigarette Labeling and Advertising Act*

In response to the nation's growing concern over health problems related to cigarette smoking, Congress enacted the Federal Cigarette Labeling and Advertising Act. Additionally, Congress was concerned about potential interference with interstate commerce caused by each state legislating a different warning to be placed on cigarette packages and in cigarette advertisements.

The original Act, drafted in 1965, required a precise warning which stated: "Caution: Cigarette Smoking May Be Hazardous to Your Health." 15 U.S.C. § 1333 (1965). In 1969 Congress strengthened the language of the warning: "Warning: The Surgeon General Has Determined That Cigarette Smoking Is Dangerous to Your Health." 15 U.S.C. § 1333 (1976). Again in 1984 Congress adopted more specific language and provided four rotational warnings. 15 U.S.C. § 1333 (1984).

The Federal Cigarette Labeling and Advertising Act, § 1331 provides:

It is the policy of the Congress, and the purpose of this chapter, to establish a comprehensive Federal program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health, whereby—

(1) the public may be adequately informed about any adverse health effects of cigarette smoking by inclusion of warning notices on each package of cigarettes and in each advertisement of cigarettes; and

(2) commerce and the national economy may be (A) protected to the maximum extent consistent with this declared policy and (B) not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.

As stated above, Congress was *not* silent on the issue of preemption. The Act directly speaks to what *is* preempted in § 1334:

(a) *No statement* relating to smoking and health, other than the statement required by section 1333 of this title, shall be required on any cigarette package. (b) *No requirement or prohibition* based on smoking and health shall be imposed under State law *with respect to the advertising or promotion* of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

15 U.S.C. § 1334 (1984) (emphasis added.)

No court, including the trial court, has found state tort claims are *expressly* preempted by the Act. The trial court, in reliance on *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181 (3rd Cir.1986), determined appellants' claims were *impliedly* preempted. However, in its analysis, the trial court failed to examine the legislative history of the Act. In following the Third Circuit, the trial court concluded, "[R]esort to the Cigarette Labeling Act's legislative history is not necessary in light of the clear statutory language employed by Congress in the expression of its preemptive intent." It is with exception to this conclusion we

---

**3.** We wish to acknowledge our reliance on the scholarly opinion of Judge Sarokin of the District of New Jersey. *See Cipollone v. Liggett Group, Inc.,* 593 F.Supp. 1146 (D.N.J.1984).

examine the issue of federal preemption generally, and in particular, implied preemption.

### III.  *Federal Preemption Generally*

This appeal presents a fundamental issue, central to our precepts of "an organized and civilized society." The issue strikes at the heart of our tort reparation system and at the heart of our system of federalism. The issue is whether Congress, without any express statement, has preempted state tort law and left injured victims without a remedy thus conferring tort immunity on the tobacco industry.

> *One of the paramount interests of the members of an organized and civilized society is that they be afforded protection against harm to their persons, properties, and characters.* The logical extension of that interest is that, if harm is wrongfully inflicted upon an individual in such a society, he should have an opportunity to obtain a reasonable and adequate remedy against the wrongdoer, either to undo the harm inflicted or to provide compensation therefor. If the state is properly to serve the public interest, it must strive, through its laws, to achieve the goals of protecting the people and of providing them with adequate remedies for injuries wrongfully inflicted upon them. *So long as the state fails to do so, it will be functioning in conflict with the public interest and the public good.*

(emphasis added). *Nieting v. Blondell*, 235 N.W.2d 597, 602–03 (Minn.1975).

The United States Supreme Court, recognizing the constitutional implications of any attempt to abrogate state law, has narrowly circumscribed the preemption doctrine to carefully preserve our system of federalism. Accordingly, the starting point for analysis of preemption is the assumption that Congress did not intend to displace state law. *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed. 2d 576 (1981); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

Supreme Court decisions are replete with emphatic statements defining the limited circumstances under which preemption will apply. For example, in *Goldstein v. California*, 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973), the Court began the preemption analysis by quoting from Alexander Hamilton in the Federalist:

> An entire consolidation of the States into one complete national sovereignty would imply an entire subordination of the parts; and whatever powers might remain in them, would be altogether dependent on the general will. But as the plan of the [Constitutional] convention aims only at a partial union or consolidation, the State governments would clearly retain all the rights of sovereignty which they before had, and which were not, by that act *exclusively* delegated to the United States.

*Id.* at 552–53, 93 S.Ct. at 2308 (emphasis in original). The Court further stated:

> We must also be careful to distinguish those situations in which the concurrent exercise of a power by the Federal Government and the States or by the States alone *may possibly* lead to conflicts and those situations where conflicts *will necessarily* arise. "It is not * * * a mere possibility of inconvenience in the exercise of powers, but an immediate constitutional repugnancy that can by implication alienate and extinguish a preexisting right of [state] sovereignty."

*Id.* at 554–55, 93 S.Ct. at 2309 (emphasis in original), quoting The Federalist No. 32, p. 243 (B. Wright ed. 1961).

Similarly, in *Florida Lime and Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), the Court stated:

> The principle to be derived from our decisions is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that *the Congress has unmistakably so ordained.*

*Id.* at 142, 83 S.Ct. at 1217 (emphasis added).

This court recently analyzed a preemption issue involving the National Traffic and Motor Vehicle Safety Act (NTMVSA), 15 U.S.C.A. §§ 1381–1431 (West 1982). *Wickstrom v. Maplewood Toyota, Inc.,* 416 N.W.2d 838 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Feb. 17, 1988).

*Wickstrom* is clearly distinguishable from the present matter. First, *Wickstrom* found preemption was both *express* and *implied.* Second, the NTMVSA is far more comprehensive legislation than the Cigarette Labeling and Advertising Act. Third, Congress has designated an administrative agency, the Department of Transportation, to promulgate regulations and administer a regulatory program under the NTMVSA. Finally, the *Wickstrom* court looked to the legislative history of NTMVSA and found support for its finding of preemption.

## IV. *Implied Preemption Generally*

The factors to look for in finding implied preemption have been summarized as follows:

> Congress' intent to supercede state law altogether may be found from a "scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room to supplement it," "because the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or because "the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose."

*Cipollone,* 593 F.Supp. at 1150–51 citing *Fidelity Federal Savings & Loan Association v. De La Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947); *cited in Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Commission,* 461 U.S.

190, 203–204, 103 S.Ct. 1713, 1722, 75 L.Ed. 2d 752 (1983).

As cited above, the Supreme Court has, on numerous occasions, elaborated on the basic criteria for finding implied preemption. Even if Congress has not entirely displaced state regulation over the matter in question, state law may nonetheless be preempted to the extent that it actually conflicts with the federal law. Such conflict occurs where "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). *See generally Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984); *Pacific Gas & Electric Co.,* 461 U.S. 190, 203–204, 103 S.Ct. 1713, 1721–1722, 75 L.Ed.2d 752 (1983); *Fidelity Federal Savings & Loan Association,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982).

Together, these principles seek to accommodate the competing interests engendered by appropriate national regulation and the legitimate exercise of state power. Underlying any discussion of preemption, therefore, is the structural foundation of a federal system, in which state and federal regulation must coexist. The preservation of that system requires a presumption "that Congress did not intend to displace state law," *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed. 2d 576 (1981), quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. at 230, 67 S.Ct. at 1152; "(p)re-emption of state law by federal statute or regulation is not favored 'in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.'" *Commonwealth Edison Co. v. Montana,* 453 U.S. 609, 634, 101 S.Ct. 2946, 2962, 69 L.Ed.2d 884 (1981), quoting *Chicago & North Western Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 317, 101

S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981); *Florida Lime & Avocado Growers*, 373 U.S. at 142, 83 S.Ct. at 1217. Moreover, state law should be suspended "only to the extent of actual conflict with the scheme of federal regulation." *In re Quanta . Resources Corp.*, 739 F.2d 912, 915 (3d Cir. 1984), citing *Stellwagen v. Clum*, 245 U.S. 605, 613, 38 S.Ct. 215, 217, 62 L.Ed. 507 (1918).

## V. *Implied Preemption in the Federal Cigarette Labeling and Advertising Act*

In the present case, the traditional presumption against preemption is heightened by four factors. First, Congress has spoken on the issue of preemption and not expressly preempted state tort claims. Second, the state law which respondent attempts to displace relates to the health and safety of the citizens of Minnesota and thus falls within the traditional domain of the states. Third, examination of the Act's legislative history does not persuade us Congress intended to preempt state tort claims. Finally, if state tort law is preempted, personal injury victims would be left without a remedy—a situation which has not been tolerated by either the United States Supreme Court or the Supreme Court of Minnesota. *See, e.g., Gryc v. Dayton–Hudson Corp.*, 297 N.W.2d 727 (Minn.1980), *cert. denied*, 449 U.S. 921, 101 S.Ct. 320, 66 L.Ed.2d 149 (assessment of punitive damages notwithstanding a preemption provision in the Flammable Fabrics Act); *Pikop v. Burlington Northern R. Co.*, 390 N.W.2d 743 (Minn.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1616, 94 L.Ed.2d 80.

### A. *Congress has Spoken on Preemption*

There is no more reliable indication of what Congress intended to preempt on a given subject than what it expressly preempted in the statute. It is one thing for courts to try to divine congressional intent from the overall operation of a statute and its legislative history when Congress has been silent, but it is quite another to do so when Congress has included specific provisions, as it did in 15 U.S.C. § 1334, expressly addressing what it intended to preempt. The plain language of § 1334 mandates that states may not impose requirements or prohibitions "with respect to the advertising or promotion of any cigarettes." No mention is made concerning a preemption of state tort claims.

### B. *State Police Powers*

The United States Supreme Court has repeatedly recognized the provision of certain remedies is "properly within the scope of state superintendence." *Florida Lime*, 373 U.S. at 144, 83 S.Ct. at 1218. Thus, in determining whether Congress has preempted state law, courts must "start with the assumption that the historical police powers of the states were not to be superseded by the Federal Act unless that was *the clear and manifest purpose of Congress.*" *Rice* 331 U.S. at 230, 67 S.Ct. at 1152 (emphasis added).

That health and safety matters lie within the domain of the states has been long recognized by the Supreme Court. As the Court stated in *Head v. New Mexico Board of Examiners in Optometry*, 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1963):

[T]he statute here involved is a measure directly addressed to protection of the public health, and the statute thus falls within the most traditional concept of what is compendiously known as the police power.

*Id.* at 428, 83 S.Ct. at 1762. *See also Maurer v. Hamilton*, 309 U.S. 598, 60 S.Ct. 726, 84 L.Ed. 969 (1939); *Atlantic Coast Line Railroad Co. v. Georgia*, 234 U.S. 280, 34 S.Ct. 829, 58 L.Ed. 1312 (1914).

More recently, in *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985) the Court noted the strong presumption "that state and local regulation of health and safety matters can constitutionally coexist with federal regulation" and repeated that "the regulation of health and safety matters is primarily, and historically, a matter of local concern." *Id.* at 716, 719, 105 S.Ct. at 2376, 2378. The Court

thus contrasted the preemption analysis of health and safety matters with the analysis in other areas, such as foreign affairs, where an intent to preempt can be "inferred * * * from the dominance of the federal interest * * *." *Id.* at 719, 105 S.Ct. at 2378, citing *Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

The Court in *Hillsborough County* also recognized that a mere threat of conflict between state and federal law is "too speculative to support preemption," especially in the field of health and safety. 471 U.S. at 720, 105 S.Ct. at 2379. A classic statement of this proposition is found in *Huron Portland Cement Co. v. City of Detroit,* 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960), in which the Court stated:

> In determining whether the state · has imposed an undue burden on interstate commerce, it must be borne in mind that the Constitution when "conferring upon Congress the regulation of commerce, * * * never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country."

*Id.* at 443–44, 80 S.Ct. at 816. *See also Rice v. Norman Williams Co.,* 458 U.S. 654, 659, 102 S.Ct. 3294, 3299, 73 L.Ed.2d 1042 (1982) ("The existence of a hypothetical or potential conflict is insufficient to warrant the preemption of the state statute."); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Ware,* 414 U.S. 117, 127, 94 S.Ct. 383, 389, 38 L.Ed.2d 348 (1973).

The claim that unless state common law actions are preempted, cigarette manufacturers will be subjected to multiple and conflicting standards with regard to labeling and advertising is purely hypothetical and thus does not warrant a finding of preemption.

Cigarette manufacturers claim they are entitled to special treatment because their industry is subject to "comprehensive" regulations. *If* this regulation is "comprehensive," it is so only to the extent of labeling and advertising of cigarettes. Further-more, in today's society, virtually every sphere of activity is subject to comprehensive federal regulation. Accordingly, even in the most heavily regulated areas the Supreme Court has recognized federal regulation and state tort law can—and must—coexist.

In *New York State Dept. of Social Services v. Dublino,* 413 U.S. 405, 415, 93 S.Ct. 2507, 2514, 37 L.Ed.2d 688 (1973), the Court stated:

> We reject, to begin with, the contention that pre-emption is to be inferred merely from the comprehensive character of the federal work incentive provisions. The subjects of modern social and regulatory legislation often by their very nature require intricate and complex responses from the Congress, but without Congress necessarily intending its enactment as the exclusive means of meeting the problem.

(Citations omitted). *See also Hillsborough County,* 471 U.S. at 717, 105 S.Ct. at 2377 ("[M]erely because the federal provisions were sufficiently comprehensive to meet the need identified by Congress did not mean that States and localities were barred from identifying additional needs or imposing further requirements in the field.").

No case illustrates this principle more dramatically than *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984), in which the Supreme Court refused to preempt a punitive damages award—even though the case involved the nuclear industry, one of the most pervasively regulated in the nation. *Silkwood* is the Supreme Court's most recent analysis of preemption of state remedies for personal injury victims, and the holding of *Silkwood* is controlling in the present case.

*Silkwood* presented the issue of whether a state-authorized award of punitive damages for personal injury arising out of the escape of plutonium from a federally licensed nuclear facility was preempted by the Atomic Energy Act. The first sentence of the decision states, "[S]tates are precluded from regulating the safety aspects of nuclear energy." 464 U.S. at 240–41, 104 S.Ct. at 617. The Court also stated, quot-

ing from an earlier decision, "the Federal Government has occupied the entire field of nuclear safety concerns * * *." *Id.* at 249, 104 S.Ct. at 622.[4]

Nevertheless, the Court refused to find that the $10 million punitive damages award was preempted. The Court stated:

> No doubt there is tension between the conclusion that *safety regulation is the exclusive concern of the federal law* and the conclusion that *a state may nevertheless award damages based on its own law of liability.* But as we understand what was done over the years in the legislation concerning nuclear energy, *Congress intended to stand by both concepts and to tolerate whatever tension there was between them.* We can do no less. It may be that the award of damages based on the state law of negligence or strict liability is regulatory in the sense that a nuclear plant will be threatened with damages liability if it does not conform to state standards, but that regulatory consequence was something that Congress was quite willing to accept.

464 U.S. at 256, 104 S.Ct. at 625 (emphasis added). The Supreme Court further stated:

> The United States, as *amicus curiae,* contends that the award of punitive damages in this case is pre-empted because it conflicts with the federal remedial scheme, noting that the NRC is authorized to impose civil penalties on licensees when federal standards have been violated. However, the award of punitive damages in the present case does not conflict with that scheme. Paying both federal fines and state-imposed punitive damages for the same incident does not appear to be physically impossible. Nor does exposure to punitive damages frustrate any purpose of the federal remedial scheme.

464 U.S. at 257, 104 S.Ct. at 626 (citations omitted).

As in the present case, the defendant in *Silkwood* argued an award of damages under state law would frustrate the congressional aim of protecting commerce and the national economy. Indeed, the *Silkwood* dissent stated:

> Congress has been committed to the policy of encouraging private development of nuclear energy from 1954 to the present. * * * The economy particularly of the Western Democracies—perhaps, indeed, democracy itself—depends upon the energy that is now primarily derived from fossil sources.

*Id.* at 281, 104 S.Ct. at 638 (Powell, J., dissenting). Even the majority stated, "There is little doubt that a primary purpose of the Atomic Energy Act was, and continues to be, the promotion of nuclear power." *Id.* at 257, 104 S.Ct. at 626, quoting *Pacific Gas.*

However, the majority, again quoting from *Pacific Gas,* concluded that "the promotion of nuclear power is not to be accomplished 'at all costs.'" *Id.*

The tobacco industry, as contrasted with the nuclear industry, is not developing alternative means of energy to fuel the democracies of the world. Rather, the tobacco industry is promoting a product which is known to cause disease. If the nuclear industry does not deserve protection "at all costs," certainly neither does the tobacco industry.

### C. *Legislative History*

Since the historical decision in *Gibbons v. Ogden,* courts have struggled with whether federal law preempts state action. The problem is "largely one of statutory construction," and therefore "cannot be reduced to general formulas." *Cipollone v. Liggett Group, Inc.,* 593 F.Supp. 1146 rev'd and remanded 789 F.2d 181 (3rd Cir. 1986), citing L. Tribe, American Constitutional Law at 377 (1978).

---

**4.** The *Silkwood* decision quoted from *Pacific Gas and Electric Co. v. State Energy Resources Conservation & Development Commission,* 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). In *Pacific Gas,* the court stated that "limited powers" were expressly ceded to the States with respect to the nuclear industry. *Id.* at 212, 103 S.Ct. at 1726. However, those powers were "for purposes other than protection against radiation hazards." *Id.* at 210, 103 S.Ct. at 1725.

Clearly the object of all interpretation and construction of laws is to ascertain and effectuate the intent of the legislative body. *See, e.g.*, Minn.Stat. § 645.16. As in all cases involving statutory construction of a federal law, "our starting point must be the language employed by Congress," *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979), and we assume "that the legislative purpose is expressed by the ordinary meaning of the words used." *Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962). Thus "[a]bsent a *clearly expressed* legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) (emphasis added).

However, where the words of an act are not explicit, the intention of the legislature may be ascertained by considering: (1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of the statute. Minn.Stat. § 645.16.

Applying these considerations to the Federal Cigarette Labeling and Advertising Act supports our finding that the Act was not intended to preempt state tort actions. The occasion and necessity for the law was clearly the health concerns raised by the 1965 Surgeon General's Report and the threat to commerce posed by individual state action regarding the labeling and advertising of cigarettes. It is not disputed that the Act was a compromise between those who wanted strict regulation, including an outright ban on cigarettes, and the tobacco industry which opposed any additional regulation.

Clearly by the language of § 1331 the object of the Act is to establish "a comprehensive program to deal with cigarette labeling and advertising" and the mischief to be remedied was "diverse, nonuniform and confusing cigarette labeling and advertising."

The consequences of an interpretation of the Act which finds preemption of state tort action are discussed in detail below in the section "absence of a remedy." A comparison of these consequences, which include denying legal recourse to injured persons, with the hypothetical economic injury to the tobacco industry if product liability litigation is allowed, provides additional support for our conclusion in this case.

Finally, we believe it was a critical omission for the trial court not to examine the legislative history of the Act. Significantly, the third circuit in *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 186 (3rd Cir. 1986) the case upon which the trial court placed strong reliance, similarly chose not to review legislative history.

However, the federal trial court which was reversed by the third circuit went to great lengths to carefully examine the legislative history of the Act. *See Cipollone v. Liggett Group, Inc.*, 593 F.Supp. 1146, 1157–63 (D.N.J.1984). This discussion is particularly enlightening and leads us to the conclusion that it was *not* the intent of Congress to take over the traditionally state-run area of tort compensation.[5]

Of particular relevance are specific references to congressional debates wherein supporters of the Act responded to questions from members of Congress by offering assurances that the proposed legislation would *not* negatively affect the rights of injured parties to seek redress against tobacco companies. *Id.* at 1162–63.

### D.  *Absence of a Remedy*

The drastic nature of preemption is evidenced by the present case, in which a finding of preemption would effectively

---

**5.** Equally helpful is the amicus brief submitted by the Public Citizen Litigation Group which includes a detailed discussion of the legislative history of the Act and its two subsequent amendments.

deny injured persons their constitutional right to present their claims to a jury.[6] Most importantly, where federal law fails to provide any remedy for personal injuries, as in the present case, *preemption would eliminate all means of recourse.* This is a result that has not been sanctioned by the United States Supreme Court.

Indeed, the main factor upon which the *Silkwood* decision was based was the lack of any federal remedy for injured persons. The court stated:

> It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct.

*Id.* 464 U.S. at 251, 104 S.Ct. at 623, citing *United Construction Workers v. Laburnum Construction Corp.,* 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954). Even the dissent in *Silkwood* agreed compensatory damages could not be preempted:

> Because the Federal Government does not regulate the compensation of victims, and because it is inconceivable that Congress intended to leave victims with no remedy at all, the preemption analysis established by *Pacific Gas* comfortably accommodates—indeed it compels—the conclusion that compensatory damages are not preempted whereas punitive damages are.

*Silkwood* 464 U.S. at 263–64, 104 S.Ct. at 629 (Blackmun, J., dissenting).

One of the cases relied upon by the majority in *Silkwood* was *Laburnum,* in which the Supreme Court refused to preempt a tort action even though it also constituted an unfair labor practice for which certain administrative remedies were available under the Labor Management Relations Act. In *Laburnum,* the Supreme Court stated:

> Here Congress has neither provided nor suggested any substitute for the traditional state court procedure for collecting damages for injuries caused by tortious conduct. For us to cut off the injured respondent from this right of recovery will deprive it of its property without

recourse or compensation. To do so will, in effect, grant petitioners immunity from liability for their tortious conduct.

347 U.S. at 663–64, 74 S.Ct. at 837.

*Laburnum* is the first in a long line of labor cases in which the Supreme Court has refused to preempt state tort actions, notwithstanding comprehensive federal labor regulations, because of the state interest in protecting the health and welfare of its citizens and because of the lack of an alternative remedy. *See, e.g., International Union, United Automobile, Aircraft and Agricultural Implement Workers v. Russell,* 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed. 2d 1030 (1958); *Linn v. United Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966); *Farmer v. United Brotherhood of Carpenters and Joiners of America,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977); *Sears Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978). In *Linn,* a defamation action, the Supreme Court acknowledged the statements at issue in the common-law action might be subject to an action under the National Labor Relations Act before the National Labor Relations Board. However, the Court stated:

> The Board can award no damages, impose no penalty, or give any other relief to the defamed individual.

> On the contrary, state remedies have been designed to compensate the victim and enable him to vindicate his reputation. The Board's lack of concern with the "personal" injury caused by malicious libel, together with its inability to provide redress to the maligned party, vitiates the ordinary arguments for preemption.

*Id.* at 63–64, 86 S.Ct. at 663–64.

Likewise the Cigarette Labeling and Advertising Act offers no redress for injured parties. Therefore, remedies provided by state tort law will not be withdrawn from Minnesota citizens without either an express statement from Congress or a clear

---

**6.** *See, e.g.,* U.S. Const. amends. V, VII and XIV; Minn. Const. art. 1 § 4 and art. 1 § 8 ("Every person is entitled to a certain remedy in the law for all injuries and wrongs * * * ").

and unequivocal finding of implied preemption.

## VI. *Conclusion*

In conclusion we wish to emphasize that in no way does our holding suggest that appellants will or should succeed in this action or that respondents should be found liable for damages. We recognize appellants' claims may be difficult to prove. However, the difficulty of proof should not preclude the basic right to present claims for adjudication. We simply do not find that the provision of this opportunity to be heard will undermine the objectives of Congress in enacting the Federal Cigarette Labeling and Advertising Act.

We recognize the potential for significant burdens on our legal system if we "open the floodgates" and allow smokers the opportunity to seek redress for alleged injuries. We are also mindful of the negative economic consequences which respondents *predict* will occur if they are subject to tort actions. However, at the very heart of our ruling is the firm conviction that if there is a need to immunize the tobacco industry from tort liability, that decision must be made by Congress in an unambiguous mandate and *not* by the courts.

### DECISION

Reversed.