Robert C. SCHLOTZ, et al., Appellants,

v.

HYUNDAI MOTOR COMPANY, a South Korean corporation, et al., Walter Carl Albers, Respondents.

No. C5–96–1207.

Court of Appeals of Minnesota.

Jan. 14, 1997.

Tyrone P. Bujold, Mullen J. Dowdal, Robins, Kaplan, Miller & Ciresi, Minneapolis, for Appellant.

David W. Graves, Jr., Robert M. Lewis, Bowman and Brooke, Minneapolis, for Respondent Hyundai Motor Company.

Considered and decided by KALITOWSKI, P.J., TOUSSAINT, C.J., and FOLEY,*J.

## OPINION

KALITOWSKI, Judge.

Robert C. Schlotz and Cindy J. Schlotz, plaintiffs in an automobile crashworthiness action, appeal from a grant of summary judgment in favor of manufacturers and distributer, Hyundai Motor Company, Hyundai Motor America, Inc., and Mitsubishi Motor Sales of America, Inc. (Hyundai). Appellants challenge the district court's grant of summary judgment, contending: (1) their common law claims based on Hyundai's failure to install lap belts are not preempted by the National Traffic and Motor Vehicle Safety Act (Safety Act); and (2) the district court erred in applying Minn.Stat. § 169.685, subd. 4, to bar their automobile crashworthiness and defective seat back claims.

## FACTS

Robert C. Schlotz, the driver of a 1988 Hyundai-manufactured Mitsubishi Precis, was waiting for a chance to turn left into a shopping mall when another automobile rear-ended his car propelling it into oncoming traffic. A second car then collided head-on with Schlotz's Precis. Following impact the seat back released and Schlotz slid forward and upward under his shoulder harness. Schlotz suffered severe injuries including a torn intestine and a compression fracture of the vertebrae.

The vehicle's passive restraint system was designed to engage without action by the occupant and incorporated the following: (1) a two-point shoulder belt consisting of a shoulder strap permanently attached at the base of the right side of the driver's seat, extending across the torso and shoulder area

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

of the driver and manually fastened to the door on the upper-left side of the driver; (2) a seat mounted retractor; and (3) a ramped seat with knee bolsters designed to provide lower torso restraint in a frontal collision. By design, the vehicle was not equipped with lap belts.

The Schlotzes sued Hyundai claiming both the passive seat belt system and the seat back in the vehicle were defective and unreasonably dangerous directly causing Robert Schlotz's injuries. The district court granted summary judgment in favor of Hyundai based on two theories: (1) appellants' common law claims were preempted by the Safety Act; and (2) Minn.Stat. § 169.685, subd. 4, operates to bar appellants' automobile crashworthiness and defective seat back claims.

## ISSUES

1. Does the Safety Act preempt appellants' common law claim that the automobile at issue was not crashworthy because of Hyundai's failure to install lap belts?

2. Does Minn.Stat. § 169.685, subd. 4, bar appellants' claim based on Hyundai's failure to install lap belts?

3. Does Minn.Stat. § 169.685, subd. 4, bar appellants' claim based on an allegedly defective seat back?

## ANALYSIS

■■■ The interpretation of statutes is a question of law reviewed de novo by this court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). When interpreting statutes, a court's function is to ascertain and effectuate the intention of the legislature. Minn.Stat. § 645.16 (1996). If a statute is free from ambiguity, execution of this task requires courts to look only at the statute's plain language. *Id.; Tuma v. Commissioner of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn.1986).

Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law.

Minn.R.Civ.P. 56.03. On appeal from summary judgment, we ask whether there is a genuine issue of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990).

## I.

Appellants contend the district court erred in determining their crashworthiness cause of action was preempted under the Safety Act.

> Preemption analysis begins with the assumption that the "historic police powers of the [s]tates" are not to be eclipsed unless to do so was "the clear and manifest purpose of Congress."

*Dahl v. Charles Schwab & Co.*, 545 N.W.2d 918, 922 (Minn.1996) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)), *cert. denied*, —— U.S. ——, 117 S.Ct. 176, 136 L.Ed.2d 116 (1996).

■■■ Without the guidance of express language preempting state action or a savings clause expressly preventing implied preemption, courts must determine whether Congress implied the preemption of state regulation. *Id.* 545 N.W.2d at 922–23. State regulation will be impliedly preempted if: (1) Congress has entirely displaced the possibility of state regulation; or (2) state regulations conflict with federal law. *Id.* at 924 (citing *Pacific Gas & Electric v. State Energy Resources Comm'n*, 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983)). State law conflicts with federal law when "compliance with both federal and state regulations is a physical impossibility" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 141–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963)).

Congress enacted the National Traffic and Motor Vehicle Safety Act of 1966, 49 U.S.C. §§ 30101–69 (1994),[1] "to reduce traffic acci-

---

1. The Safety Act was recently recodified, from Title 15 to Title 49 of the United States Code, so all "laws related to transportation [appear] in

one comprehensive title." H.R.Rep. No. 103–180, at 3 (1994), *reprinted in* 1994 U.S.C.C.A.N. 818, 820. In making changes in the language to

dents and deaths and injuries resulting from traffic accidents." 49 U.S.C. § 30101 (previously codified at 15 U.S.C. § 1381 (1988)). The Safety Act authorized the Secretary of Transportation to establish practicable motor vehicle safety standards. 49 U.S.C. § 30111(a) (previously codified at 15 U.S.C. § 1392(a) (1988)). The Secretary, in turn, delegated this duty to the National Highway Transportation Safety Association (NHTSA), which promulgated Federal Motor Vehicle Safety Standards (FMVSS) at 49 C.F.R. §§ 571.1–.304 (1995).

FMVSS 208 is the standard governing occupant crash protection. 49 C.F.R. § 571.208. Automobile manufacturers choosing passive restraint systems to meet FMVSS 208 requirements may choose from among three FMVSS 208 options and must meet performance requirements for the chosen option. *Id.* at S4.1.2.1–.3. In addition, manufacturers may substitute an automatic restraint system to "meet the crash protection requirements of any" of the first three options, or "in place or any seat belt assembly otherwise required by that option." *Id.* at S4.5.3. This fourth option allows manufacturers to meet performance standards without installing any manual belts.

Congress, recognizing that it was legislating in an area previously governed by state law, addressed preemption stating:

> When a motor vehicle safety standard is in effect under this chapter, a State or political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle * * * only if the standard is identical to the standard prescribed under this chapter.

49 U.S.C. § 30103(b)(1) (previously codified at 15 U.S.C. § 1392(d) (1988)). A Senate Report explained the significance of safety standards as follows:

> [S]tandards are expected to be performance standards, specifying the required minimum safe performance of vehicles but not the manner in which the manufacturer is to achieve the specified performance. * * * The Secretary would thus be con-

attain uniformity within the title and conform to contemporary usage, precautions were taken

cerned with measurable performance of a braking system, but not its design details.

S.Rep. No. 1301, at 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2709, 2714.

■ Appellants, narrowly construing the preemption provision, first argue it does not preempt common law claims because safety standards are administrative standards or regulations and therefore, the phrase "safety standards" does not include common law claims. We disagree. Common law rules are state standards. *See CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993) (determining that legal duties imposed by the common law fall within the scope of a preemption clause barring any state "law, rule, regulation, order or standard"). The language in the preemption clause, therefore, precludes a state from establishing common law safety standards differing from federal standards.

Appellants also contend their common law claims are expressly preserved by a savings clause in the Safety Act:

> Compliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law.

49 U.S.C. § 30103(e) (previously codified at 15 U.S.C. § 1397(k) (1988)). We disagree. This savings clause does not preserve common law claims that conflict with federal law. Appellants' argument disregards case law holding that despite the savings clause, the Safety Act and FMVSS 208 preempt common law defective product claims grounded on failure to install an air bag because common law liability would have a regulatory effect conflicting with federal law. *See, e.g., Wickstrom v. Maplewood Toyota, Inc.,* 416 N.W.2d 838, 840 (Minn.App.1987) (common law claims that a car is defective because it has one restraint option authorized under FMVSS 208 instead of another FMVSS 208 restraint with an air bag are preempted under the Safety Act), *review denied* (Minn. Feb. 17, 1988).

against making substantive changes in the law. *Id.*

*Wickstrom* explains how the savings clause operates to retain common law liability while allowing implied preemption of some claims:

> The clear meaning of the [Safety Act's savings clause] is that compliance with federal standards will not protect automobile manufacturers from liability for design defects in connection with matters **not** covered by federal standards.

*Id.; see also Perry v. Mercedes Benz of N. Am., Inc.,* 957 F.2d 1257, 1265 (5th Cir.1992) (recognizing that a manufacturer who chooses to "meet only the bare minimum performance requirements will be burdened with the potential for [common law] liability, but this is the exact burden that Congress preserved in the Savings Clause").

The following reasoning in *Wickstrom* provides further guidance:

> A court decision creating common law liability for the failure to install airbags will effectively force automobile manufacturers to choose the airbag option over other statutorily approved options. * * * **A court decision that removes the element of choice authorized in the occupant crash safety regulations will frustrate the statutory scheme.**

416 N.W.2d at 841 (citation omitted). Thus, regardless of the potentially increased safety aspects of air bags, state courts are impliedly preempted from creating common law safety standards frustrating Congress's purpose of creating uniform motor vehicle safety standards.

Appellants argue *Wickstrom* is not controlling because their claim is not based on Hyundai's choice of FMVSS 208 options. Appellants contend Hyundai's choice of design was defective because it failed to restrain Mr. Schlotz properly. Hyundai disagrees, contending *Wickstrom* applies because the only defect appellants attribute to Hyundai's restraint system is the missing lap belt.

In *Wickstrom,* the court recognized that some FMVSS 208 options, i.e., air bags, may offer increased safety aspects. *Id.* To allow a defective product claim that would hold an authorized FMVSS 208 option to the same common law safety standards as could be obtained through selection of the air bag option, however, would effectively foreclose selection of other FMVSS 208 options. *Id.* Similarly, appellants here cannot claim the FMVSS 208 option selected by Hyundai is defective because it failed to protect occupants as effectively as an alternative FMVSS 208 restraint system utilizing lap belts.

Appellants do not allege that the vehicle failed to meet the protection requirements and injury criteria of FMVSS 208. As the district court correctly noted, appellants' common law defective design claim is, in reality, a "no lap belt" claim. Hyundai was authorized by federal law to choose a passenger restraint system from among available options set forth under FMVSS 208 and Hyundai selected an available option that did not mandate installation of a lap belt.

We conclude that appellants' claim is preempted because a court decision creating common law liability for Hyundai's failure to install lap belts would, in effect, force manufacturers to choose a lap belt option over other options approved under FMVSS 208. *See Dykema v. Volkswagenwerk AG,* 189 Wis.2d 206, 525 N.W.2d 754, 758 (App.1994) (addressing the federal preemption issue and holding that plaintiff's defective design and negligence claims, based on the manufacturer's failure to provide adequate lower pelvic restraint, would establish a different safety standard from that required by federal law), *review denied,* —— Wis.2d ——, 531 N.W.2d 326 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 60, 133 L.Ed.2d 23 (1995).

## II.

■ Appellants contend the district court erred in determining that the plain language of Minnesota's "seat belt gag rule," Minn. Stat. § 169.685, subd. 4, bars their crashworthiness claims. The statutory seat belt gag rule provides:

> Proof of the use or failure to use seat belts * * *, or proof of the installation or failure of installation of seat belts * * * shall not be admissible in evidence in any litigation involving personal injuries or property damage resulting from the use or operation of any motor vehicle.

Minn.Stat. § 169.685, subd. 4. This court, in *Anker v. Little,* recently determined that the gag rule language applies in crashworthiness actions to unambiguously prohibit admission of evidence of the use or nonuse of seat belts in any litigation involving personal injury that results from the use or operation of a motor vehicle. 541 N.W.2d 333, 339 (Minn. App.1995) (holding plaintiff's cause of action extinguished through application of the seat belt gag rule), *review denied* (Minn. Feb. 9, 1996). Consistent with *Anker,* we conclude that the plain language of the seat belt gag rule bars crashworthiness actions grounded on the installation or failure of installation of seat belts and that the district court correctly concluded that *Anker* is dispositive.

The district court also granted summary judgment on appellants' crashworthiness claim based on an allegedly defective seat back because "[appellants'] theory of defect and causation rely on the asserted cooperation of the seat back and the occupant restraint system." As stated by the district court, "the seat back and the passive restraint system are [so] intertwined * * * that it would be impossible for a jury to distinguish between the two." In light of our determination regarding the applicability of the seat belt gag rule, we conclude that, because the theory of causation of appellants' claim intertwines an alleged vehicle defect with the manufacturer's failure to install seat belts, the seat belt gag rule bars the defective seat back claim.

## DECISION

The district court properly concluded that: (1) the National Traffic and Motor Vehicle Safety Act preempts appellants' common law crashworthiness claim; and (2) Minn.Stat. § 169.685, subd. 4, bars both appellants' crashworthiness claim and appellants' defective seat back claim.

**Affirmed.**